W. V. NORTON, Larry Norton and Louis Harold Norton, Plaintiffs-Appellants,

v.

Wesley LIDDEL, Sheriff; Van A. Zimmerman, Marvin Wade, Claud Cain, Buck Mayes, Woodie Caldwell, Deputy Sheriffs; and George L. Pace, formerly Assistant District Attorney, all of Love County, State of Oklahoma, Defendants-Appellees.

No. 78–1712.

United States Court of Appeals, Tenth Circuit.

Argued Nov. 28, 1979.

Decided March 6, 1980.

Henry C. Starke, Oklahoma City, Okl., for plaintiffs-appellants.

Ronald E. Worthen, Dist. Atty., Twentieth Judicial Dist., State of Oklahoma, and Robert M. Highsmith, Asst. Dist. Atty., Marietta, Okl., for defendants-appellees Liddel, Zimmerman, Wade, Cain, Mayes and Caldwell.

Jan Eric Cartwright, Atty. Gen. of Oklahoma, and John F. Fischer, II, Asst. Atty. Gen. of Oklahoma, Oklahoma City, Okl., for defendant-appellee Pace.

Before BARRETT, DOYLE and McKAY, Circuit Judges.

BARRETT, Circuit Judge.

The issue presented in this case is whether a private individual actively conspiring with an immune State official to purposely and knowingly deprive another of his rights secured under the Constitution and laws of the United States is acting under "color of law" as required by 42 U.S.C. § 1983.[1]

### Factual Background

In June, 1976, W. V. Norton (Norton) filed an action in the District Court of Love County, Oklahoma, to quiet title to a twelve acre tract of land. One of the defendants in the action, F. J. Schmitz (Schmitz) occupied the property under a lease from Norton. During the term of the lease, Schmitz constructed various improvements on the property in connection with his development of a race track. The lease agreement specifically provided that any improvements of a permanent nature made by Schmitz would become the property of Norton upon termination of the lease.

In November, 1976, Schmitz was judicially declared in default under the lease. James W. Oliphant (Oliphant), also a defendant in the action, was granted a lien against personal property of Schmitz located on the subject twelve acre tract as a result of unsatisfied debts incurred in connection with the construction of the improvements. Oliphant's lien on Schmitz' personal property was declared superior to any lien claimed by Norton against Schmitz.

In November, 1976, a writ of execution was issued by the District Court of Love County, Oklahoma, commanding Sheriff Wesley Liddel (Liddel) to seize property of Schmitz located on Norton's real property in satisfaction of Oliphant's judgment. Admittedly, the writ of execution was drawn in broader terms than that of the judgment.

On December 28, 1976, Sheriff Liddel, his deputies, and Assistant District Attorney George L. Pace (Pace) proceeded to Norton's property to execute the writ. After being refused entry to the premises, a skirmish ensued between Larry Norton, Louis Harold Norton and several Sheriff's deputies. Larry Norton and Louis Harold Norton were subdued and arrested for resisting and interfering with the deputies in the performance of their official duties, and for assault and battery on a police officer. Following their arrest, and the subsequent removal of W. V. Norton, the Sheriff and his deputies proceeded to remove certain permanent improvements which were later sold to satisfy Oliphant's judgment against Schmitz.

Some time after the occurrence of the incidents on December 28, 1976, charges of inciting to riot were filed in State District Court against all three plaintiffs. These charges were dismissed at plaintiffs' preliminary hearing on January 24, 1977.

### The Instant Litigation

In a complaint filed in the United States District Court for the Eastern District of Oklahoma, plaintiffs charged that defendants Liddel and Pace actively conspired to cause an Information to issue charging them with inciting to riot, a felony, as a "mere pretext to provide color for the arrest and punishment of plaintiffs for exercising their lawful and constitutional right[s]." [R., Vol. II, p. 303]. Substantial compensatory and punitive damages were prayed for in the complaint.

---

1. Appellants have raised other issues which we have carefully considered. We affirm the District Court's rulings on these other issues.

Approximately seven months later, after extensive discovery, motions for summary judgment were filed on behalf of all defendants. In an order entered July 18, 1978, the District Court granted Sheriff Wesley Liddel's summary judgment "as to all claims arising from his alleged participation in the filing of an information charging the plaintiffs with inciting to riot." [R., Vol. IV, pp. 763, 770].[2] The District Court ruled in pertinent part as follows:

The plaintiffs' claim for damages allegedly resulting from the filing of the inciting to riot charges are [sic] based upon the allegation that ". . . the defendant[s], George L. Pace and Wesley Liddel caused an information to issue out of the District Court of Love County charging the plaintiffs, and each of them, with inciting to riot. . . ." In Oklahoma, it is the office of the District Attorney, not the Sheriff, which files criminal informations. *See* 22 O.S. § 258; *Ex parte Lewis*, [85 Okl.Cr. 322] 188 P.2d 367 (Okl.Cr.1947). To the extent that the Sheriff merely provided facts to defendant Pace upon which the information was ultimately based, his actions were of such a nature that they could have been taken by any citizen, and in providing such facts, defendant Liddel was not acting under color of State law as required by 42 U.S.C. § 1983. While it is true that the acts of a private individual can constitute acts done under color of State law if there is joint activity or a conspiracy between the private individual and a state official acting within the authority of his office, *Warner v. Croft*, 406 F.Supp. 717 (W.D.Okla.1975), such private individuals cannot be held liable under § 1983 if the state official is himself immune to liability under the facts alleged. *Sykes v. State of California*, 497 F.2d 197 (9th Cir. 1974). This Court has previously held that defendant Pace is immune from liability for his acts in connection with the filing of the information, and it is there-

fore clear that no claim based upon that information can be maintained against defendant Liddel. Consequently, all claims for damages allegedly arising from the filing of the information are hereby dismissed.

[R., Vol. IV, pp. 767–768].

### Our Disposition

■ "Although a § 1983 claim has been described as 'a species of tort liability,' *Imbler v. Pachtman*, 424 U.S. 409, 417 [96 S.Ct. 984, 988, 47 L.Ed.2d 128 (1976)], it is perfectly clear that not every injury in which a state official has played some part is actionable under that statute." *Martinez v. California*, ── U.S. ──, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980). To hold otherwise would render § 1983 and the Fourteenth Amendment to the United States Constitution a "font of tort law to be superimposed upon whatever systems may already be administered by the States." *Paul v. Davis*, 424 U.S. 693, 701, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1976).

■ We do not believe that the Fourteenth Amendment or the Civil Rights Act were designed to redress injuries incurred by reason of unfounded or malicious claims/suits brought in State court, where adequate State remedies are available to the aggrieved parties. Nevertheless, if the misuse of the legal procedure is so egregious as to subject the aggrieved individual to a deprivation of Constitutional dimension, and the tortfeasor is acting under color of State law, § 1983 may be employed. *See: Hampton v. Hanrahan*, 600 F.2d 600, 630 (7th Cir. 1979), *cert. docketed* (No. 79–912, December 11, 1979); *Beker Phosphate Corporation v. Muirhead*, 581 F.2d 1187 (5th Cir. 1978) (Per curiam).

It must be emphasized that two elements must be pled and proven by a plaintiff to recover under § 1983.

First, the plaintiff must prove that the defendant has deprived him of a right

---

2. On December 28, 1977, the District Court dismissed all claims against Assistant District Attorney George L. Pace based on the complaint's allegation that he caused an Information to issue charging plaintiffs with inciting to riot. [R., Vol. II, p. 368]. *See also: Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1973).

secured by the "Constitution and laws" of the United States. Second, the plaintiff must show that the defendant deprived him of this constitutional right "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory." This second element requires that the plaintiff show that the defendant acted "under color of law." *Adickes v. S. H. Kress and Co.*, 398 U.S. 144, 150, 90 S.Ct. 1598, 1604, 26 L.Ed.2d 142 (1970). *See also: Flagg Brothers, Inc. v. Brooks*, 436 U.S. 149, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978); *Clappier v. Flynn*, 605 F.2d 519 (10th Cir. 1979); *Lessman v. McCormick*, 591 F.2d 605 (10th Cir. 1979).

■ It was the absence of the second element above referred to (acting under color of law) which induced the District Court to grant summary judgment to Sheriff Liddel on the malicious prosecution claims. Relying primarily on *Sykes v. State of California, supra*, the District Court ruled, in essence, that no claim for relief can exist under the Civil Rights Act if a private person is alleged to have conspired with an immune State official, in this case a State prosecutor, inasmuch as the private individual is not conspiring with a person acting under color of law against whom a valid claim can be stated. Certainly, this view is supported in several Circuits. However, we believe that the better reasoned view is that *where a private individual actively conspires with an immune State official (acting under color of law) with the intent to purposely and knowingly deprive an individual of his rights secured under the Constitution and laws of the United States, the fact that the State official is immune from suit in damages should not provide a windfall defense to the private conspirator.*[3]

### A

■ It is clear, of course, that the Nortons have no right to civil redress against Assistant District Attorney Pace in connection with his initiation of criminal charges against plaintiffs. *Imbler v. Pachtman, supra; Atkins v. Lanning*, 556 F.2d 485 (10th Cir. 1977) (Per curiam). This is so even though Pace's actions may have been undertaken maliciously, intentionally, and in bad faith, as alleged in Norton's complaint.[4] The cloak of immunity accorded to Pace in the exercise of his prosecutorial function does not, however, lessen the fact that his actions in filing the Information were taken under color of law. To be sure, Pace's alleged misuse of his prosecutorial authority was made possible only because he was vested with such power by virtue of State law and clothed with the authority of State law. *Imbler v. Pachtman, supra; Monroe v. Pape*, 365 U.S. 167, 184, 81 S.Ct. 473, 482, 5 L.Ed.2d 492 (1961), *overruled in part, Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *United States v. Classic*, 313 U.S. 299, 326, 61 S.Ct. 1031, 1043, 85 L.Ed. 1368 (1941); *Brown v. Chaffee*, 612 F.2d 497 (10th Cir. 1979); Okla.Stat.Ann. Tit. 22, § 303 (West).

■ Even though Pace was acting under color of law in initiating the prosecution, the same cannot be held to be true of Sheriff Liddel, who allegedly provided the facts upon which the Information was ultimately based. Liddel's "position as sheriff does not make his every action one under color of law; only when he is using the power granted by the state does it become state action." *Brown v. Chaffee, supra*, at p. 501. In Oklahoma, it is the office of the District Attorney, not that of the Sheriff, which files criminal Informations. Okla. Stat.Ann. Tit. 22, §§ 258, 303, 409(2) (West). An Information signed by a prosecuting witness is simply insufficient as a substitute for an Information signed by a district attorney. *Cf.: Coffer v. State*, 508 P.2d 1101 (Okl.Cr.1973) (failure to sign information by

---

**3.** This conflict in the Circuits is detailed in *Sparkman v. McFarlin*, 601 F.2d 261 (7th Cir. 1979) (en banc) (Per curiam). *See also:* Annotation, *Liability, in Federal Civil Rights Actions Under 42 U.S.C.S. § 1983, of Private Parties*

*Who Conspire With Immune Officials*, 44 A.L. R.Fed. 547 (1979).

**4.** We, of course, draw no conclusion in this regard.

district attorney is jurisdictional as to the person). Thus, Liddel's actions in providing facts upon which the Information was ultimately based, were similar to that of any other citizen.

### B

■ We now turn to the question of whether a private individual (Liddel) actively conspiring with an absolutely immune State official (Pace) with the intent to purposely and knowingly deprive another of his rights secured under the Constitution and laws of the United States is acting under color of law as required by 42 U.S.C. § 1983.[5] It is our view that the critical inquiry in making this determination is: Has the plaintiff demonstrated the existence of a significant nexus or entanglement between the absolutely immune State official and the private party in relation to the steps taken by each to fulfill the objects of their conspiracy? The resolution of such issues must, of necessity, be made on a case-to-case basis.

■ In *Torres v. First State Bank of Sierra County,* 588 F.2d 1322 (10th Cir. 1978) we tangentially faced this issue. We there held that a private party's use of a state court to obtain an *ex parte* temporary restraining order, which allegedly violated the plaintiff's right of due process of law, did not constitute a sufficient nexus giving rise to the requisite action under color of law. We did not question, however, that the issuance of the order constituted State action. Rather, we held that the State's action in issuing the *ex parte* temporary restraining order was not sufficiently entangled with the defendant private party's actions so as to clothe the private party's actions as that of the State's. Where a State, such as in *Torres,* does no more than furnish a neutral forum for the resolution of issues and has no interest in the outcome of the lawsuit, the State court's action in issuing an order cannot be imputed to the private party seeking issuance of the order.

We reached a similar result in *Torres* when faced with the question of whether the involvement of a deputy sheriff in serving the temporary restraining order was sufficient to bring the private defendant's actions within § 1983. We specifically observed that had the deputy sheriff "*colluded* with the bank officer to misrepresent the contents of the order it would be a different matter." [Emphasis ours]. *Torres v. First State Bank of Sierra County, supra,* at 1327.

Here, Norton's complaint specifically alleged that Pace and Liddel "were conspirators engaged in a scheme and conspiracy designed and intended to deny and deprive plaintiffs of their rights guaranteed under the Constitution and laws of the United States . . . ." [R., Vol. II, p. 300]. It further alleged that Pace and Liddel conspired to cause an Information to issue charging each of the plaintiffs with the felony of inciting to riot and that such charges were dismissed at the plaintiffs' preliminary hearing on January 24, 1977. More importantly, however, the plaintiffs alleged that they

> were not engaged in disturbing the peace or inciting to riot or in the commission of any offense against the ordinances of the City of Marietta, or the laws of the State of Oklahoma at the time of said arrest or any time, and the charge of inciting to riot was a *mere pretext* to provide color for the arrest and punishment of plaintiffs for exercising their lawful and constitutional right[s] . . . [Emphasis ours].

[R., Vol. II, p. 303].

Sufficient controverting facts were not produced by the defendants to refute these allegations.

■ Inasmuch as the District Court granted summary judgment to Sheriff Liddel solely on the ground that his actions in providing facts to Assistant District Attorney Pace were not under color of law, we

---

5. The determination of this issue has been specifically reserved for later consideration by the United States Supreme Court. *Stump v.*

*Sparkman,* 435 U.S. 349, n. 13, 98 S.Ct. 1099, n. 13, 55 L.Ed.2d 331 (1978).

must assume the existence of a constitutional deprivation. *McClelland v. Facteau,* 610 F.2d 693, at p. 696 (10th Cir. 1979).[6] We are bound by the long standing doctrine that pleadings, documentary issues, and factual inferences tending to show issues of material fact should be viewed in the light most favorable to the party opposing summary judgment, *Harsha v. United States,* 590 F.2d 884 (10th Cir. 1979), and that summary judgment must be denied unless the moving party demonstrates its entitlement beyond a reasonable doubt. *Madison v. Deseret Livestock Co.,* 574 F.2d 1027 (10th Cir. 1978). Thus, drawing the inferences in the light most favorable to the Nortons, we hold that there are sufficient allegations of entanglement between Assistant District Attorney Pace and Liddel which, if proven, clothe Liddel's actions with color of state law in conspiring with Pace to maliciously prosecute the Nortons.[7]

> The involvement of a state official in such a conspiracy plainly provides the state action essential to show a direct violation of petitioner's Fourteenth Amendment equal protection rights, whether or not the actions of the police were officially authorized, or lawful; . . . Moreover, a private party involved in such a conspiracy, even though not an official of the State, can be held liable under § 1983. "Private persons, jointly engaged with state officials in the prohibited action, are acting 'under color' of law for purposes of the statute. To act 'under color' of law does not require that the accused be an officer of the State. It is enough that he is a willful participant in joint activity with the State or its agents," *United States v. Price,* 383 U.S. 787, 794, [86 S.Ct. 1152, 1157, 16 L.Ed.2d 267] (1966).

*Adickes v. S. H. Kress & Company, supra,* 398 U.S. at page 152, 90 S.Ct. at page 1605.

. . . . .

> The ultimate destiny of the private party can in no way be said to depend upon the status of the official with whom he conspired or upon the defenses available to that official. The concerted action which permits a finding of state action cannot simply be erased by the absence of the state actor as a defendant or by the fact that the state actor might later raise a successful defense to the plaintiff's claim.

*Downs v. Sawtelle,* 574 F.2d 1, 15 (1st Cir. 1978), *cert. denied,* 439 U.S. 910, 99 S.Ct. 278, 58 L.Ed.2d 255 (1978).

*Accord: Sparks v. Duval County Ranch Co., Inc.,* 604 F.2d 976 (5th Cir. 1979) (en banc), *cert. granted sub. nom. Dennis v. Sparks,* —— U.S. ——, 100 S.Ct. 1336, 63 L.Ed.2d 775 (1980).

C

Some of the decisions holding that no claim for relief can exist under the Civil Rights Act if a person is alleged to have conspired with an immune State official can be read as broadening the cloak of immunity accorded to the State official so as to encompass the private parties engaged in the conspiracy with him. The all-encompassing "umbrella" cloak of immunity should not, in our view, apply under the facts and circumstances of the instant case. It is important to observe, however, that this Court has recognized the validity of such holding under facts and circumstances distinguishable from those presented here. In *Atkins v. Lanning, supra,* we held:

> As to the district attorney's investigators, it would hardly seem reasonable to exculpate the district attorney and to not im-

---

6. We do not reach any conclusion as to whether or not an actual claim of Constitutional deprivation can be proven. We make this assumption simply because the District Court based its ruling solely on the second element, which we hold to be in error. This should not be construed to preclude the District Court's re-examination of the Constitutional deprivation issue on remand.

7. We do not decide the question of whether a callous or reckless disregard of facts by an absolutely immune State official which ultimately deprives a victim of his constitutional rights constitutes a sufficient enough State entanglement or nexus with the private individual so as to render the private individual's actions under color of law.

. munize his underlings. . . . The cases cited by the district court involve police officers or police investigators; *Scheuer, supra* [*Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90] involved the executive branch of government, not the judicial branch. The situation is different where the district attorney's staff (who are inextricably tied to the quasi-judicial process of initiating, preparing, and presenting a case) have made an error than it is when the police have carelessly or falsely arrested or injured someone.

*Atkins v. Lanning, supra,* at p. 489.

We agree with the rationale employed in the *Atkins* case. Our holding here is not in conflict with *Atkins.* In the instant case, Liddel's actions in providing facts for the initiation of the prosecution were not so inextricably linked to the judicial process so as to bring him under the prosecutor's or judge's "umbrella" of absolute immunity from liability. The role of Sheriff Liddel in this case cannot be equated with that of the prosecutor or the judge, because *any person* aggrieved by the conduct charged to the plaintiffs could have complained to the prosecutor. Thus, the Sheriff's official status could not, as a matter of law, have had a significant bearing upon the prosecutor's determination to initiate criminal proceedings against the plaintiffs.[8] We observe, however, that Liddel is entitled to assert the defenses of good faith and probable cause in this action brought pursuant to § 1983, *Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967); *Page v. Rose,* 546 P.2d 617 (Okl.1975).[9] These defenses, of course, go to the question of whether a conspiracy actually existed between Pace and Liddel.

Some decisions and law reviews have suggested that the inconvenience and embarrassment placed on prosecuting attorneys and judges should Civil Rights Act suits be allowed against their alleged co-conspirators justifies immunization of the co-conspirators. We recognize this danger. However, we believe that if the courts place a heavy burden on plaintiffs to plead and prove sufficient facts establishing a substantial nexus between the absolutely immune State official and the private co-conspirator, many of the concerns will be eliminated and become "less important than . . . bringing conspirators to book." *Slotnick v. Staviskey,* 560 F.2d 31, 33, n. 1 (1st Cir. 1977), *cert. denied,* 434 U.S. 1077, 98 S.Ct. 1268, 55 L.Ed.2d 783 (1978).

REVERSED AND REMANDED for further proceedings consistent with this opinion.

---

8. It is possible to reach a different conclusion concerning Liddel's service of the writ of execution and the return and sale thereunder. In that situation Sheriff Liddel may have been cloaked with the absolute immunity accorded the issuing judge because he was performing a ministerial act at the direction of the court. *See: Hazo v. Geltz,* 537 F.2d 747 (3rd Cir. 1976). Here the District Court ruled Liddel was entitled to a qualified immunity "for any proper and necessary act done in executing a writ of process issuing from a court, provided the writ of process is valid on its face." [R., Vol. IV, p. 769]. Inasmuch as we hold that the issue of Liddel's entitlement to the qualified immunity as a matter of fact was properly determined at trial, we need not reach the question of whether he is entitled to derivative absolute immunity under these facts.

9. In *Page v. Rose, supra,* the Oklahoma Supreme Court succinctly summarized the availability of the defenses in an action for malicious prosecution:

"Where a full and fair disclosure of the material facts has been made by the person procuring the criminal prosecution to the prosecuting attorney for the government, and his advice is honestly sought and acted on in good faith, this negatives the absence of probable cause and is a complete defense to an action of malicious prosecution by the person accused."

*Page v. Rose,* supra at 621, *quoting, Missouri, Kansas and Oklahoma Coach Lines, Inc. v. Meister,* 330 P.2d 579 (Okl.1958) (Per curiam).