**Wayne Ronald ANDERSON, Plaintiff,**

v.

**John GLISMANN, Defendant.**

Civ. A. No. 83–K–1916.

United States District Court,
D. Colorado.

Jan. 18, 1984.

Wayne R. Anderson, pro se.

Edward D. Bronfin, Pryor, Carney & Johnson, Englewood, Colo., for defendant.

## ORDER GRANTING MOTION TO DISMISS

KANE, District Judge.

This matter is before me on defendant's motion to dismiss for failure to state a claim upon which relief can be granted. Wayne Ronald Anderson alleges that Dr. John Glismann, a psychiatrist, violated his constitutional rights by advising a judge to award custody of his son to his ex-wife. Anderson also claims that Glismann's actions constituted an invasion of privacy, fraudulent misrepresentation, professional malpractice and simple negligence.

Anderson's troubles began when he became separated from his ex-wife, Willow Cramlet, in December of 1977. Cramlet filed a petition for dissolution in Jefferson County District Court on March 9, 1978. During this time, Anderson abducted his son Eland during an overnight visitation informally agreed upon by Anderson and Cramlet. Eland was returned to Cramlet pursuant to an order of the Texas Family Court in Houston on April 14, 1978. On April 19, 1978 Judge Priest of the district court issued a temporary restraining order prohibiting Anderson from seeing Cramlet or Eland. In July of 1978, Judge Joseph P. Lewis awarded temporary custody of Eland to Cramlet, and directed respective counsel "to reach an agreement as to an appropriate mental health professional to utilize in performing diagnostic evaluations of the child and the parties for the purposes of custody, ...." Counsel on both sides agreed to have Dr. Glismann evaluate the Andersons and make a recommendation to the court regarding the custody of Eland. Dr. Glismann was officially appointed by the court to perform the evaluation on September 15, 1978. In November of 1978, Dr. Glismann recommended that the child continue in the custody of the mother. The decree of dissolution was final in April of 1979. The court awarded permanent custody of Eland to his mother with visitation rights to his father.

Anderson abducted Eland a second time in January of 1980 during a scheduled weekend visitation. The two were not seen

again until June of 1983. Cramlet filed an action in state court against Phil Donahue and the producers of his television show in November of 1980. The basis of the action was Anderson's appearance on the show, admitting that he abducted Eland in violation of the court's order. The case was removed to federal court where the defendant Dr. Glismann testified as an expert witness for Cramlet. *See Cramlet v. Multimedia, Inc.*, Civil Action No. 80–C–1737 (D.Colo. May 13, 1983).

During his deposition and testimony in the *Multimedia* case, Dr. Glismann discussed his custody evaluation, his impressions of Anderson and the effect of the kidnapping on Cramlet. The plaintiff's claims are also based on the doctor's testimony as an expert witness in the *Multimedia* litigation. I must determine if Anderson's claims have merit.

## I. FIRST CLAIM FOR RELIEF: 42 U.S.C. § 1983

Plaintiff has asserted a cause of action under 42 U.S.C. § 1983 against Dr. Glismann on the grounds that his equal protection and due process rights were violated because Dr. Glismann's custody evaluation was biased in favor of his ex-wife:

> It is this right to equal consideration and due process of law that plaintiff claims was violated by the prejudiced evaluation and decision of defendant under color of state law in this case.

Plaintiff's Brief in Opposition to Defendant's Motion to Dismiss at 10. [hereinafter cited as Brief in Opp.]

■ It is axiomatic that to obtain relief under section 1983, a plaintiff must show that the defendant deprived him of a right secured to him by the Constitution or federal law, and that the deprivation occurred under color of state law. *See Flagg Brothers, Inc. v. Brooks*, 436 U.S. 149, 155, 98 S.Ct. 1729, 1732, 56 L.Ed.2d 185 (1978); *Paul v. Davis*, 424 U.S. 693, 696–97, 96 S.Ct. 1155, 1158, 47 L.Ed.2d 405 (1975); *Adickes v. S.H. Kress and Co.*, 398 U.S. 144, 150, 90 S.Ct. 1598, 1604, 26 L.Ed.2d 142 (1970); *Wise v. Bravo*, 666 F.2d 1328, 1331 (10th Cir.1981). I will first determine

whether the defendant's recommendation constituted state action.

### A. Liability as Court Appointed Psychiatrist

■ The relevant inquiry is whether Dr. Glismann's actions can be fairly attributed to the state. The Supreme Court has articulated a number of different tests for determining whether a party is a state actor. *See Lugar v. Edmonson Oil Co. Inc.*, 457 U.S. 922, 939, 102 S.Ct. 2744, 2755, 73 L.Ed.2d 482 (1981). However, a determination of whether there is sufficient state action must be made by weighing the circumstances in each case.

In this case, Dr. Glismann was appointed by the district court to recommend who should have custody of Eland Anderson. The fact that Dr. Glismann evaluated the Andersons pursuant to a court appointment does not constitute state action. The plaintiff has produced no evidence showing that Judge Priest or any other officers of the court influenced Dr. Glismann's decision. It is undisputed that Dr. Glismann's evaluation was performed under the authority of the district court. However, the mere fact that a private party's actions are performed pursuant to a court appointment does not make those actions fairly attributable to the state.

The Fourth Circuit Court of Appeals confronted an identical claim in *Hall v. Quillen*, 631 F.2d 1154 (4th Cir.1980). The plaintiff in *Hall* filed a section 1983 action in federal district court against the judge who had him committed to a state hospital, the court-appointed physician who examined him prior to his commitment and the attorney who represented him in the commitment proceedings. The district court dismissed all claims on grounds of immunity. The court of appeals affirmed stating:

> Accordingly, the initial and threshold issue here is not immunity but whether a state appointed counsel or *physician* can be liable under § 1983 in an action in federal court, or, otherwise stated, *is the representation by the counsel and the*

*action of the physician in such a situation state action?* (emphasis added).

631 F.2d at 1155.

We accordingly conclude that, whether the physician and the lawyer in this case enjoy immunity or not, ... they were entitled to the dismissal of plaintiff's § 1983 action against them for *want of state action.* (emphasis added).

631 F.2d at 1156.

A similar action was instituted against a private psychiatrist in *Landry v. Odom,* 559 F.Supp. 514 (E.D.La.1983). The court in *Landry* held that the psychiatrist's issuance of a certificate resulting in the plaintiff's continued involuntary confinement at a hospital did not constitute state action. In *Landry,* the plaintiff based her section 1983 claim on the fact that the psychiatrist had issued the certificate pursuant to a state statute. The court held that such a connection with the state was tenuous:

Here, the [S]tate of Louisiana is undoubtedly, responsible for the statute in question, but Dr. Palotta's involvement, by his actions pursuant to that statute, without something more, is not sufficient to justify a characterization of him as a state actor.

559 F.Supp. at 517.

The circumstances in this case require me to reach the same conclusion as the *Hall* and *Landry* cases. The mere fact that Dr. Glismann acted as a court-appointed psychiatrist will not sustain a cause of action under section 1983. A court-appointed expert acts under the authority of a state, but not on behalf of the state.

There is no allegation that Dr. Glismann conspired with Judge Priest to violate Anderson's constitutional rights. The Tenth Circuit has addressed the liability of a private individual under section 1983 where a conspiracy exists:

[W]here a private individual actively conspires with an immune state official, acting under color of law, with the intent to purposely and knowingly deprive an individual of his rights secured under the Constitution and laws of the United States, the fact that the state official is immune from suit in damages should not provide a windfall defense to the private conspirator.

*Norton v. Liddel,* 620 F.2d 1375, 1379 (10th Cir.1980). The court in *Liddel* also announced the standard to be applied in determining whether there is an active conspiracy:

It is our view that the critical inquiry in making this determination is: Has the plaintiff demonstrated the existence of a significant nexus or entanglement between the absolutely immune state official and the private party in relation to the steps taken by each to fulfill the objects of their conspiracy.

620 F.2d at 1380.

This plaintiff has not met the test of *Liddel.* The plaintiff in his brief has admitted that he cannot prove that Judge Priest and the defendant conspired to violate his civil rights:

In the case at bar the facts concerning how closely the defendant, Miss Cramlet, her lawyer, and/or the state court associated in depriving plaintiff of any chance to win custody of his son should become known as a result of the discovery process in this case. It may then be necessary to request leave to amend the complaint in this case to include a cause of action for civil *conspiracy, but facts upon which to base such a claim are not presently available to plaintiff.* (emphasis added).

Brief in Opp. at 4. Since the plaintiff's complaint does not set forth any facts supporting a conspiracy between Judge Priest and the defendant, it fails to state a claim for relief under section 1983.

### B. *Liability as a Witness*

██ Plaintiff's section 1983 claim against Dr. Glismann as a witness must also be dismissed. Anderson claims that Dr. Glismann "embellished and altered" the conclusions he made in his original custody report while testifying in the *Multimedia* case. This altered testimony according to the plaintiff, violated plaintiff's equal protection and due process rights.

A private citizen who testifies in a trial is not acting under color of state law and his false testimony does not give rise to a cause of action under the civil rights statute.[1] *See Smith v. Sinclair,* 424 F.Supp. 1108, 1113 (W.D.Okl.1976) and cases cited therein. *See also Taylor v. Nichols,* 558 F.2d 561, 564 (10th Cir.1977) ("The acts of filing a claim and testifying at trial do not constitute state action. These are private acts.") As an expert witness in the *Multimedia* case, Dr. Glismann was not testifying in the capacity of a state official or pursuant to any state law.[2] Thus, defendant's testimony even if perjured, would not support a section 1983 claim.

## II. ATTORNEY FEES

■ The Civil Rights Attorneys Fee Award Act of 1976, 42 U.S.C. § 1988, allows this court to award attorney fees to prevailing parties in certain civil rights actions. The United States Supreme Court in *Christianburg Garment Co. v. E.E.O.C.,* 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978) held that a prevailing defendant in a section 1983 claim can recover his reasonable attorney fees from the plaintiff "upon a finding that the plaintiff's action was frivo-lous, unreasonable or without foundation, even though not brought in subjective bad faith." 434 U.S. at 421, 98 S.Ct. at 700. *See also Hughes v. Rowe,* 449 U.S. 5, 14, 101 S.Ct. 173, 178, 66 L.Ed.2d 163 (1980). Attorney fees are also recoverable under state law. *See* Colo.Rev.Stat. § 13–17–101 (Cum.Supp.1982).

The Tenth Circuit Court of Appeals has awarded attorney fees to prevailing defendants in section 1983 actions on two separate occasions.[3] The most recent award was made in *Campbell v. Cook,* 706 F.2d 1084 (10th Cir.1983), where a black sergeant in the Oklahoma City police department filed a section 1983 claim against the city manager, police chief and assistant police chief, alleging that he was demoted solely because of his race. The court of appeals held that the district court erred in not granting the defendants' motion for attorney fees under 42 U.S.C. § 1988. The court stated:

It is uncontested that appellants were the prevailing parties herein and that the district court considered Campbell's suit frivolous. Under such circumstances we

---

**1.** The immunity afforded witnesses in section 1983 actions stems from the English common law "where witnesses have long enjoyed absolute immunity from civil liability arising from their testimony." *See Briscoe v. LaHue,* 663 F.2d 713, 718 (7th Cir.1981), *aff'd,* —— U.S. ——, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983) and cases cited therein.

**2.** The Supreme Court in *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) held that state officials only enjoyed qualified immunity from section 1983 liability:

Since the statute relied on thus included within its scope the '[m]isuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law,' . . . government officials, as a class, could not be totally exempt, by virtue of some absolute immunity from liability under its terms.

416 U.S. at 243, 94 S.Ct. at 1689. Thus, where perjured testimony by a state official infringes the constitutional rights of another, section 1983 liability attaches. *See also Briggs v. Goodwin,* 569 F.2d 10 (D.C.Cir.1977), *cert. denied,* 437 U.S. 904, 98 S.Ct. 3089, 57 L.Ed.2d 1133 (1978):

Policy considerations counselling the insulation of private citizens from civil liability aris-ing from their performance as witnesses do not apply with equal force when a [c]omplaint charges that constitutional rights have been violated by a public employee operating from the witness stand.

569 F.2d at 28.

**3.** Other courts have made similar awards. *See Tonti v. Petropoulous,* 656 F.2d 212, 217 (6th Cir.1981) (district court properly awarded attorney fees against plaintiff where section 1983 claim against probate judge was frivolous); *Brown v. Farleigh Dickinson University,* 560 F.Supp. 391, 405 (D.N.J.1983) (plaintiff's § 1981, § 1985 and Title VII claims against defendants and university were frivolous—attorney fees awarded); *Soto v. Romero Barcelo,* 559 F.Supp. 739, 745 (D.Puerto Rico 1983) (See cases cited at 742 n. 6, governor of Puerto Rico entitled to attorney fees as prevailing defendant in claims brought under §§ 1983 and 1985(3)); *Kaimowitz v. Howard,* 547 F.Supp. 1345, 1351 (E.D. Mich.1982) (section 1983 claim against school superintendent and school board members was frivolous where it was clear that defendants had nothing to do with plaintiff's failure to be hired).

hold the district court erred in overruling appellant's motion for attorney fees.

706 F.2d at 1087. The court made a similar award in *Prochaska v. Marcoux*, 632 F.2d 848 (10th Cir.1980), *cert. denied*, 451 U.S. 984, 101 S.Ct. 2316, 68 L.Ed.2d 841 (1981) where a boat owner sued a state wildlife conservation officer for allegedly violating his civil rights. The defendant had observed the plaintiff operating his boat without a current registration license and proceeded to check plaintiff's fishing license and safety gear. Plaintiff was tried and convicted of violating the state boating safety laws and then initiated a section 1983 action against the conservation officer in 'federal district court. In reversing the district court's denial of defendant's motion for attorney fees, the court of appeals found that the plaintiff's claim was frivolous since he admitted that he was violating the state safety laws and since the defendant did not enter or search his boat. 632 F.2d at 854.

I do not assume that plaintiff's section 1983 claim is frivolous simply because it was dismissed. Indeed, as a *pro se* complainant, Mr. Anderson "should not be punished for his failure to recognize subtle factual or legal deficiencies in his claim." *Hughes*, 449 U.S. at 15, 101 S.Ct. at 178. Yet, the harm produced by insubstantial cases cannot be ignored. Here the deficiencies are fundamental and should be obvious even to a tyro.

Plaintiff instituted this action against defendant, a court-appointed psychiatrist, on the grounds that defendant violated his due process and equal protection rights by recommending that the court award custody of his son to his ex-wife. Plaintiff failed to demonstrate which right guaranteed by the constitution was violated or that Dr. Glismann was acting for the state or that his acts were the proximate cause of his assumed injury. Plaintiff admits that he had no constitutionally guaranteed right to have custody of his son. Brief in Opp. at 9. He also admits that he cannot prove that the defendant and the judge who entered the custody order conspired to violate his civil rights. Brief in Opp. at 4. Plaintiff's claim therefore is comprised of no more

than conclusory allegations. Since he has not established by affidavits or otherwise any facts supporting these allegations, I find that the section 1983 claim is groundless and supports an award of attorney fees.

Not only does the groundlessness of this action require me to award attorney fees to the defendant, but the policy of encouraging private physicians and psychiatrists to aid the courts in custody determinations supports such an award:

> To open physicians to federal suit by decreeing that they act for the state in making purely medical decisions would effectively chill the use, and accompanying benefit of a private physician's judgment in an emergency situation simply because the physician may not be willing to give it for fear of being exposed to a lawsuit.

*Watkins v. Roche*, 529 F.Supp. 327, 330 (S.D.Ga.1981). This defendant should not have to fear exposure to future lawsuits when aiding a court.

## III. PENDENT CLAIMS

### A. Invasion of Privacy

The second claim for relief alleges that Dr. Glismann invaded Anderson's privacy by disclosing confidential information about plaintiff while testifying in the *Multimedia* case. Plaintiff bases his claim on Colo.Rev.Stat. § 13–90–107(1)(d) (1973 & Cum.Supp.1982) which provides that communications made by a patient to a physician or surgeon authorized to practice medicine in Colorado are privileged if "acquired in attending the patient which was necessary to enable the [physician] to prescribe or act for the patient...."

The issue to be decided here is whether Dr. Glismann was "acting or prescribing" for Anderson while evaluating him pursuant to the court's appointment. Anderson claims that Dr. Glismann was acting or prescribing for him because he paid Dr. Glismann $400 to perform the evaluation. The payment of this money, according to plaintiff, established a physician-patient re-

lationship under Colo.Rev.Stat. § 13–90–107(1)(d). Simply stated, it does not.

First, the court ordered Mr. Anderson to pay Dr. Glismann the fee of $400. Second, the physician-patient privilege does not automatically attach within the meaning of § 13–90–107(1)(d) when the physician is paid a fee. The determinative factor is whether the physician is retained to prescribe or act for the patient, so that any communications from the patient to the physician are necessary to achieve that goal. The facts in this case do not even approach § 13–90–107(1)(d). I find that this claim, too, is frivolous.

Dr. Glismann was acting as an independent court-appointed psychiatrist. He was in no way retained to perform or act for Anderson. The sole basis of his contact with the plaintiff was to report his findings to the court. The plaintiff therefore, knew at the outset that Dr. Glismann would relate his opinions and information to some third party. A physician-patient privilege does not attach under such circumstances.

The Colorado Supreme Court in *People v. Reynolds*, 195 Colo. 386, 578 P.2d 647 (1978) discussed when information acquired by a physician is privileged:

> Under Colorado law, information acquired by a physician is privileged only if it was obtained 'in attending the patient' and 'was necessary to enable him to prescribe or act for the patient.' (citations omitted).

578 P.2d at 649. The information disclosed to Dr. Glismann by the plaintiff was necessary to enable Dr. Glismann to make an evaluation for the court, not to treat the plaintiff. Thus, the communications made to Dr. Glismann by Anderson are not privileged. The claim for invasion of privacy is dismissed.[4]

## B. Fraudulent Misrepresentation

■ Plaintiff in his third claim for relief, alleges that defendant with intent to deceive and defraud plaintiff represented that he would make an unbiased custody evaluation while never intending to do so:

> [Defendant] demanded and took payment for a claimed unbiased decision while knowing there was no chance he would recommend custody to anyone but the mother.

Brief in Opp. at 21.

In order for plaintiff to recover for fraudulent misrepresentation, he must meet the standards announced in *Morrison v. Goodspeed*, 100 Colo. 470, 477–78, 68 P.2d 458, 462 (1937):

> To support an action on false representations, a plaintiff must establish that there were representations of a past or present fact, made with knowledge of their falsity and made with the intent that the plaintiff act in reliance on these misrepresentations and that they were relied on to the plaintiff's damage.

*Headrick v. Mutual Supply Company*, 497 P.2d 701, 703 (Colo.App.1972) (citing *Morrison*). Plaintiff has not met the *Morrison* test. Even if Dr. Glismann never intended to make an unbiased evaluation, the plaintiff has not shown how he relied upon the representation or how he was damaged by Glismann's statement. Plaintiff claims that his reliance is evidenced by his paying Glismann $400 to perform the evaluation. Such a contention is unfounded. The state court ordered Anderson to pay Dr. Glismann. The plaintiff must plead and prove both reliance and damages in order to sustain a claim for fraudulent misrepresentation.

A common element of all fraud actions is that there be reliance by plaintiff on the representation or the non-disclosure, and that such reliance must result in damage.

---

**4.** One court has explicitly held that a physician-patient relationship is not created when a psychiatrist examines a defendant under court appointment. *See Collins v. Auger*, 428 F.Supp. 1079, 1084 (D.Iowa 1977). *See also United States v. Harper*, 450 F.2d 1032, 1035 (5th Cir. 1971) (testimony of two doctors as to their court ordered examinations did not violate physician-patient privilege); *Hardy v. Riser*, 309 F.Supp. 1234, 1239 (D.Miss.1970) (physician-patient privilege applies only to physicians employed by patient, not to physicians appointed by the court).

Indeed, liability for fraud cannot be established without first establishing the existence of damages.

*Greene v. Thomas*, 662 P.2d 491, 495 (Colo. App.1982) (citations omitted). Defendant's third claim for relief is dismissed.

### C. Professional Negligence

■ Plaintiff's fourth claim for relief must also be dismissed because it is barred by Colo.Rev.Stat. § 13–80–105 (Cum.Supp. 1982). That provision bars medical malpractice actions if they are not brought "within two years after the person bringing the action discovered, or in the exercise of reasonable diligence and concern should have discovered the injury." Plaintiff contends that this cause of action is not barred because his injury was not discovered until he obtained access to the defendant's testimony in the *Multimedia* case. Plaintiff's reasoning is baffling.

If defendant breached any duty to plaintiff, such breach occurred when the initial custody evaluation was made, in November of 1978, not when the defendant testified in the *Multimedia* litigation. Since plaintiff's alleged injury could have been discovered by reasonable diligence in 1978, his malpractice claim is barred by the statute of limitations.

### D. Simple Negligence

■ Plaintiff's final cause of action is based on ordinary negligence. He alleges that the defendant "failed to comply with the duty of a reasonable man under the circumstances" because he did not consider the best interests of the child when making the custody evaluation. Plaintiff presumes that Dr. Glismann was negligent simply because he recommended that the child remain in the mother's custody.

The general rule is that negligence must be proved, and will never be presumed. The mere fact that an accident or any injury has occurred with nothing more is not evidence of negligence on the part of anyone.

*Holmes v. Gamble*, 624 P.2d 905, 906 (Colo. App.1981). In order to sustain a cause of action for negligence, the plaintiff must establish the following elements:

[The] existence of a duty on the part of the defendant; a breach of that duty; a causal connection between defendant's breach and plaintiff's injury; and injury of the plaintiff.

*Heagy v. City and County of Denver*, 472 P.2d 757, 759 (Colo.App.1970). *See also* W. Prosser, Law of Torts § 30 at 143 (4th ed. 1971). Plaintiff's claim fails because Dr. Glismann owed him no duty. The necessary physician-patient relationship from which a duty arises did not exist between defendant and plaintiff. Likewise, the elements of causality and injury are absent. This claim, too, is frivolous. Thus, plaintiff's negligence claim is dismissed.

### IV. CONCLUSION

Anderson's *pro se* complaint is to be construed liberally and should be dismissed for failure to state a claim only if it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *See Haines v. Kerner*, 404 U.S. 519, 520–21, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972). I find that Anderson's complaint does not set forth any facts supporting his claims for relief. Therefore it is ordered that:

The defendant's motion to dismiss is granted.

Attorney fees are recoverable under both federal and state law. Counsel for the defendant shall provide this court with affidavits and summaries of time and charges supported by contemporaneous time records within ten (10) days from the date of this order. At that time, a hearing will be held to award a reasonable amount of attorney fees to the defendant. *See Ramos v. Lamm*, 539 F.Supp. 730, 734 (D.Colo.1982). Defendant shall recover his costs upon filing a bill of costs with the clerk of this court.