John FLYNN, et al., Plaintiffs,

v.

FISCHER TILE & MARBLE, INC., Defendant.

No. CIV.A.01–0098 (ESH).

United States District Court, District of Columbia.

Feb. 27, 2003.

**50**

Ira Robert Mitzner, Dickstein, Shapiro, Morin & Oshinsky, L.L.P., Washington, DC, Kent Khtikian, Katzenbach & Khtikian, San Francisco, CA, for Plaintiffs.

Jeffrey Jules Pargament, Piliero, Mazza & Pargament, Washington, DC, Ronald W. Brown, Cook, Brown, Rediger & Prager, LLP, Sacramento, CA, for Defendant.

## MEMORANDUM OPINION

HUVELLE, District Judge.

Plaintiffs seek contributions that defendant allegedly failed to pay to an employee benefit plan, in violation of section 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1145. Defendant's liability to the plan hinges on whether it was bound by a 1997 collective bargaining agreement between the Tile Contractors' Association of America ("TCAA") and the Bricklayers and Allied Craftspersons International Union ("BAC International"), or in the alternative, whether it had negotiated valid independent agreements for work it performed outside the jurisdiction of its local union agreements. Since there are material facts in dispute, these issues cannot be decided as a matter of law, and thus, both plaintiffs' and defendant's motions for summary judgment will be denied.

## BACKGROUND

Plaintiffs are the fiduciaries of the Bricklayers & Trowel Trades International Pension Fund ("IPF"). (Compl.¶ 1.) The IPF is a multi-employer employee benefit plan within the meaning of sections 3(3) and 3(37) of ERISA, 29 U.S.C. § 1002(3), (37), authorized to effect collections on behalf of the BAC International and the International Masonry Institute ("IMI"). (*Id.* ¶ 4.) It is also authorized to file suit on behalf of affiliated local union pension funds.[1] (*Id.*)

Defendant Fischer Tile & Marble, Inc. ("Fischer Tile") is a licensed California tile contractor in Sacramento, California. (Memorandum of Points and Authorities in Support of Defendant's Motion for Summary Judgment ["Def.'s Mem."] at 1.) The TCAA is a nationwide association of tile contractors that provides a number of services to its members, including the negotiation of "such national labor agreements as the Board of Directors, in the exercise of its discretion, shall determine to be in the best interests of a majority of its contractor members."[2] (TCAA Bylaws at 2.) De-

---

1. The affiliated local union funds are the Bricklayer Local No. 3, the Northern California Tile Industry Health And Welfare Trust Fund, the Bricklayer Local No. 19 Pension Trust Fund, and the Bricklayer Local No. 19 Apprenticeship and Training Trust Fund.

2. Article I, Section 3 of the TCAA Bylaws states that "[t]he functions of this Association are: to develop a national association of contractors engaged in the application of ceramic and clay tile finishes on walls, ceilings, floors and all other exterior and interior surfaces; to express throughout the finishing trades a national contractor viewpoint on the use of tile products; to exploit the market potential of tile; to inform contracting applicators of the latest developments and techniques in the application of tile to all surfaces; to work with national building trades unions to stabilize their respective trade rights over the installation of tile; to foster just and equitable contractor-union relationships in this masonry specialty; to negotiate such national labor

fendant has been a member of TCAA for more than fifty years. (Statement of Undisputed Material Facts in Support of Fischer Tile's Motion for Summary Judgment ["SSUMF"] ¶ 8.)

Fischer Tile was also a member of the Associated Tile Contractors of Northern California ("ATCONC"), another multi-employer group, at all relevant time periods. (Def.'s Mot. Ex. 1, Fischer Dep. at 23–24.) ATCONC negotiated collective bargaining agreements exclusively with the BAC Local 29, the union representative of all tile setters and finishers employed by Fischer Tile and other ATCONC employers. (SSUMF ¶ 27.) The jurisdiction of BAC Local 29 spanned fifteen Northern California counties around Sacramento ("Sacramento Area Counties"). The remaining thirty-one Northern California counties, the "Bay Area Counties," were in the jurisdiction of BAC Local 19 (later Local 3) [hereinafter "BAC Local 19(3)"]. Fischer Tile was not affiliated with the multi-employer group that negotiated with BAC Local 19(3). (Def.'s Mem. at 2.) However, Fischer Tile did perform work outside the Sacramento Area Counties and it is Fischer Tile's liability to the IPF for this work that is at issue here.

In 1997, the TCAA adopted a collective bargaining agreement [hereinafter the "Agreement"] negotiated with the BAC International. The Agreement purported to bind all TCAA members by stating that TCAA had adopted it "for and on behalf of" its members and defining the employers that would be bound by the Agreement as:

> [i]ndividuals or firms belonging to the 'Tile Contractors Association of America, Inc.' who have not notified the International Union of Bricklayers and Allied Craftworkers of their intent to enter into the collective bargaining process for their own International Agreement at least sixty (60) but no more than (90) days prior to the expiration date of this Agreement or within thirty (30) days of the effective date of this Agreement. (Pls.' Mot. for Summary Judgment ["Pls.' Mot."] Ex. B, Lippert Dep. Ex. 21, 1997 TCAA Agreement at 2.)

Thus, members could opt out of the Agreement by notifying the BAC International that they did not want to participate in the Agreement and would instead negotiate their own collective bargaining agreements.[3]

On January 19, 2001, plaintiffs filed suit under section 502(a)(3) of ERISA, 29 U.S.C. § 1132(A)(3), to collect delinquent pension fund contributions allegedly owed by defendant for the period beginning with the TCAA Agreement's January 1, 1997 effective date and running through December 31, 1999, after which time defendant had formally opted out by notice dated October 20, 1999. By Order issued February 5, 2002, the Court denied defendant's motion to dismiss or transfer the action for

---

agreements as the Board of Directors, in the exercise of its discretion shall determine to be in the best interests of a majority of its contractor members; to engage in on-the-job and apprenticeship training programs to create a pool of skilled journeymen qualified to work with tile, and to establish an information-and-idea exchange where the domestic and foreign producers of tile and allied products, distributors, contractors and union leaders can work as a team to promote ceramic and clay tile to the building market." (Def.'s Mot.

for Summary Judgment ["Def.'s Mot."] Ex. 5, Fischer Decl. Ex. 2, TCAA Bylaws at 2 [hereinafter "TCAA Bylaws"].)

3. An employer could opt out of the 1997 Agreement by filing a notice by January 30, 1997. Thereafter, the 1997 TCAA Agreement was a one-year agreement that renewed for each following year whenever the employer failed to submit an opt-out notice by October 30th.

improper venue. Having completed discovery, the parties have now filed cross-motions for summary judgment pursuant to Fed.R.Civ.P. 56. Plaintiffs argue that the undisputed evidence establishes that defendant was bound by the TCAA Agreement by virtue of its membership in TCAA, and its course of conduct, including its failure to opt out of the Agreement. In response, defendant moves for summary judgment on the grounds that the undisputed evidence fails to support a finding of an unequivocal intention to be bound by the Agreement, or alternatively, that it was exempt from the Agreement because it made all required contributions pursuant to collective bargaining agreements with BAC local unions.

## LEGAL ANALYSIS

### I. 1997 TCAA Agreement

■ The test for determining whether an employer is bound by a collective bargaining agreement negotiated by a multi-employer association is well-established and was adopted in this Circuit in *Teamsters 174 v. N.L.R.B.*, 723 F.2d 966 (D.C.Cir.1983). In order to bind an employer, it must be determined that the " 'members of the group have indicated from the outset an unequivocal intention to be bound in collective bargaining by group rather than individual action.' " *Id.* at 972 (quoting *Western States Reg'l Council No. 3, Int'l Woodworkers of America v. N.L.R.B.*, 398 F.2d 770, 773 (D.C.Cir. 1968)). *See also Charles D. Bonanno Linen Serv., Inc. v. N.L.R.B.*, 454 U.S. 404, 419–20, 102 S.Ct. 720, 70 L.Ed.2d 656 (1982) (Stevens, J., concurring); *Trustees of the UIU Health and Welfare Fund v. New York Flame Proofing Co.*, 828 F.2d 79, 83 (2d Cir.1987); *Moriarty v. Glueckert Funeral Home*, 155 F.3d 859, 865 (7th Cir.1998); *Komatz Construction v. N.L.R.B.*, 458 F.2d 317, 321 (8th Cir.1972);

*Joseph Mcdaniel,* 226 N.L.R.B. 851, 853, 1976 WL 7519, *enforced sub nom. N.L.R.B. v. Beckham, Inc.,* 564 F.2d 190 (5th Cir.1977). But, as cautioned by this Circuit, this test is a stringent one, and the "intention to be bound must be unequivocal—it cannot be ambiguous or susceptible to numerous interpretations by the party who consents to engage in group bargaining." *Teamsters 174,* 723 F.2d at 972.

■ The application of this test is easy where the party has actually signed the collective bargaining agreement or has explicitly delegated bargaining authority to the multi-employer group. *See, e.g., Shearon Envtl. Design Co. v. Laborers' District Council,* 1993 WL 476232 (E.D.Pa. Nov. 18, 1993); *Ruan Transport Corp.,* 234 N.L.R.B. 241 (1978). Similarly, even though it is agreed that "mere membership" in an employers' association is not sufficient to bind the employer to an agreement, an intent to be bound will be found "if the 'principal, if not virtually sole activity' of the association is to negotiate collective bargaining agreements on behalf of its members and if the long-standing, universally observed and universally known custom is that members are bound by such agreements." *New York Flame,* 828 F.2d at 83. *See also Glueckert Funeral Home,* 155 F.3d at 867.

■ But contrary to defendant's argument (*see* Def.'s Mem. at 6); Defendant's Memorandum of Points and Authorities in Opposition to Plaintiff's Motion for Summary Judgment ["Def.'s Opp." at 2], an unequivocal intent to be bound can also be inferred even where there is no express delegation of bargaining authority or direct participation in the group bargaining process. For, as recognized by this Circuit in *Teamsters 174:*

An unequivocal intention to be bound by group action need not be expressed in a written agreement. We have recognized

that group activity can and does range over a wide spectrum of habits, practices, and understandings, explicit and implicit, which makes generalization more hazardous than usual.... Thus a party may rely on apparent, as well as express, delegation of authority in consenting to engage in joint bargaining.... Moreover, the unequivocal intention can be inferred, in part, from a course of conduct.... (An employer who, through a course of conduct or otherwise signifies that it has authorized the group to act in its behalf will be bound by that apparent creation of authority.) It is therefore appropriate ... to look at the particular facts of each case to determine whether the parties intended to be bound by group action. 723 F.2d at 972 (citations and internal quotation marks omitted). *See also Glueckert Funeral Home,* 155 F.3d at 867.

Given this need for an intensive fact-specific inquiry and the difficulties inherent in resolving issues of intent and credibility on summary judgment, the Court must conclude that neither side can prevail at this stage.

## A. Defendant's Motion

■ It is undisputed that defendant did not sign the TCAA Agreement (SSUMF ¶ 1); it did not participate in the bargaining process that resulted in that Agreement (SSUMF ¶ 3);[4] and the TCAA Bylaws make clear that collective bargaining was not the sole or principal function of the TCAA.[5] However, despite defendant's protestations to the contrary, the inquiry cannot end there, since this Circuit clearly recognizes that an intent to be bound can be inferred from the conduct of the parties. *See Teamsters 174, supra.* Because of the need to consider this course of conduct, defendant's motion must fail as a matter of law, as well as fact.

In making its motion, defendant makes short shrift of the opt-out provision contained in the 1997 Agreement, which defines "Employers" as the "individuals or firms belonging to the 'Tile Contractors Association of America, Inc.' who have not notified the International Union of Bricklayers and Allied Craftworkers of their intent to enter into the collective bargaining process for their own International Agreement." (1997 TCAA Agreement at 2.) Defendant basically dispenses with this opt-out provision by claiming that the undisputed evidence indicates that it was not put on notice of this requirement prior to the execution of the Agreement so that it could not have any binding effect. (Def.'s

---

4. In 1966, TCAA entered into a jurisdictional agreement with the Bricklayer's International Union that was signed by Henry Fischer, the president of Fischer Tile at that time. (Def.'s Mem. at 4.) The agreement defined the scope of work to be assigned to tile setters, and adopted a procedure for the resolution of jurisdictional disputes. (*Id.*) This agreement expired in 1969, and Fischer Tile did not participate in the subsequent agreement that expired in 1973. (*Id.*) There were no other agreements until 1985. (*Id.*) Fischer's participation in the 1966 Agreement cannot be construed as participation in the collective bargaining process leading to the 1997 TCAA Agreement, which was substantively different and occurred more than thirty years later.

*See Accetta Millwork, Inc.,* 274 N.L.R.B. 141 (1985) (agreement negotiated by four employers not binding on other members of multi-employer association which had disbanded twelve years earlier when only individual contracts, signed by individual employers, were entered into during the twelve-year period).

5. Negotiating labor agreements is only one of nine functions of the Association described in the TCAA Bylaws. *See supra* note 2. In addition, Fischer Tile, and presumably other employers, maintained their membership in TCAA during the period from 1973 through 1985 when TCAA was not involved in any labor negotiations. *See supra* note 4.

Mem. at 10–11; Def.'s Opp. at 11.) This argument completely ignores plaintiffs' evidence, including newsletters that were sent by TCAA to all its members in October 1996[6] and again in January 1997[7] that described TCAA's group bargaining activities on behalf of its members and contained reminders of the binding nature of the agreement and the opt-out requirement.[8] In addition, TCAA's President, Les Lippert, testified that the opt-out requirement was a topic of discussion at the TCAA convention before the 1997 Agreement was finalized. (Pls.' Mot. Ex. B, Lippert Dep. at 82.) Lippert also testified that at TCAA conventions, there were discussions of the TCAA's negotiations of collective bargaining agreements and that TCAA specifically reminded its members of the opt-out requirement if they did not want to be bound. (Pls.' Mot. Ex. B, Lippert Dep. at 59, 61, 63 (explaining that members were reminded of the "opt-out" provision at TCAA's annual meetings in 1997, 1998 and 1999).) Given this evidence, defendant simply cannot argue that there is no evidence that it was put on notice of the opt-out requirement during the relevant time period. (*See* Def.'s Opp. at 7.)

Defendant also argues that even if it had such notice, which it denies, this would not be legally sufficient to establish that defendant expressly delegated its bargaining authority to TCAA. (Def.'s Reply at 9.) Again, defendant has misinterpreted the governing law by trying to impose a requirement of an express delegation. None of the cases relied on by defendant applies such a limited test, and it is certainly not the law in this Circuit. Moreover, the cases that defendant relies on to support its position provide little assistance in this case, since none of them involves an explicit provision requiring the employer to opt-out of the agreement if it does not want to be bound. For instance, *Ruan Transport Corp.*, which is cited extensively by the defendant, had no opt-out provision, and perhaps more significantly, the collective bargaining agreement provided that members had to certify the multi-employer group to represent them in collective bargaining. *Ruan Transport Corp.*, 234 N.L.R.B. at 242, 243 n. 4. Similarly, in *Shearon*, the court found, after a trial, that the employer was not bound by the collective bargaining agreement since it did not know of the agreement or of the association's right to negotiate on behalf of its members. 1993 WL 476232. Nor was there an opt-out provision in *Glueckert Funeral Home*, and in fact, the association's constitution and bylaws did not contain any reference to collective bargaining activities when Glueckert Funeral Home became a member of the association in 1989. 155 F.3d at 862–63.

---

**6.** The October 1996 newsletter stated: "The TCAA/UIBAC Agreement will be mailed to you shortly. Please be sure to read the instructions carefully. *This is a participatory agreement for all members of the TCAA.*" (Plaintiffs' Memorandum in Opposition to Defendant's Motion for Summary Judgment ["Pls.' Opp."] Ex. K, Mehler Decl. Ex. A at 7 (emphasis added).)

**7.** The January 1997 newsletter stated:
By the time your read this issue of *9300 Contractor,* you should also have read our new labor agreement with the UIBAC. The agreement serves to answer many contractors' concerns regarding the need for an international labor agreement. *Those who do not wish to be a part of this agreement should notify IUBAC by the end of January, that they are not particpatory to this agreement and are available to negotiate for their own agreement.*
(Pls.' Opp. Ex. K, Mehler Decl. Ex. B at 2 (emphasis added).)

**8.** Fischer Tile admitted that it received newsletters from the TCAA. (Pls.' Opp. Ex. A, Fischer Dep. at 40–41.)

In contrast, the 1997 TCAA Agreement states that it applies to all members who do not opt out. To the extent that defendant had knowledge of this provision but failed to effectively withdraw as required, this conduct could support a finding of an unequivocal intent to be bound. *Cf. Sheet Metal Workers Int'l Ass'n, Local 104 v. Simpson Sheet Metal, Inc.*, 954 F.2d 554, 555 (9th Cir.1992).

In sum, there is sufficient evidence to dispute defendant's claim of a lack of knowledge, and defendant's position that the opt-out is of no legal significance is unpersuasive. Therefore, defendant's claim that it is entitled to summary judgment on this basis must be rejected.

## B. Plaintiffs' Motion

■ Plaintiffs also move for summary judgment arguing that defendant is bound by the Agreement because it was a member of the TCAA and it failed to opt out of the TCAA's group bargaining process until it sent an opt-out notice on October 20, 1999. (*See* Pls.' Opp. at 4.)[9] As previously noted, plaintiffs have adduced evidence that newsletters were sent to defendant in 1996 and thereafter notifying the TCAA members of the binding nature of the agreement and the opt-out requirement (*see supra* notes 6 and 7; Pls.' Mot. Ex. B, Lippert Dep. Ex. 44); that these subjects

were discussed at the TCAA annual conventions; that Jay Fischer attended the 1998 convention (Pls.' Mot. Ex. A, Fisher Dep. at 71–73);[10] and that the TCAA Agreement, which included notice of the opt-out provision, was sent to its members.[11]

While this evidence would undoubtedly provide a sufficient basis for the trier of fact to infer that defendant had knowledge of the binding nature of the 1997 TCAA Agreement and its opt-out requirement,[12] the Court is unable to reach this conclusion at this stage given the familiar standards which govern a motion for summary judgment. As cautioned by the Supreme Court, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor," and "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge ... on a motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Moreover, since the test for determining whether an employer is bound to a collective bargaining agreement involves a fact-specific inquiry into the employer's intent, summary judgment is even more inappropriate since "questions of intent, which

---

9. Pursuant to the terms of the TCAA Agreement, this opt-out notice was only effective to terminate defendant's involvement in the January 1, 2000 TCAA Agreement. (TCAA Agreement at 2; the October 20, 1999 letter from defendant's president, Jay Fischer, appears in Pls.' Mot. Ex. A, Fischer Dep. Ex. 3.)

10. Given that the 1998 convention took place from October 18–21, members had ten days after the close of the convention to provide the required opt-out notice for the term of the Agreement beginning January 1, 1999. Nonetheless, defendant did not send the required notice until almost a year later on October 20, 1999.

11. Plaintiffs also point to the fact that Jay Fischer would have learned of the terms of the TCAA Agreement starting in October 1997, since he served as a member of the TCAA Board of Directors and the TCAA Membership Committee. (Pls.' Opp. at 14.)

12. As noted by the Seventh Circuit in *Glueckert Funeral Home*, defendant's "ostrich-like effort not to become further knowledgeable about [the collective bargaining] aspect of the association's business" cannot insulate defendant from liability if it, in fact, possessed sufficient knowledge. 155 F.3d at 867.

involve intangible factors including witness creditability, are matters for consideration of the fact finder after a full trial." *Prochaska v. Marcoux,* 632 F.2d 848, 851 (10th Cir.1980).

Applying these standards to this case, the Court cannot conclude that it is undisputed that defendant's conduct evidenced an unequivocal intent to be bound by the 1997 Agreement. For instance, defendant has offered the testimony of its president, Jay Fischer, who denies that he knew about either the binding nature of the collective bargaining agreement or the opt-out requirement. In particular, he did not recall attending any TCAA convention prior to 1998 (Pls.' Opp. Ex. A, Fischer Dep. at 72); defendant did not participate in the negotiation of the 1997 International Agreement (SSUMF ¶ 19); it did not participate in any collective bargaining negotiations (SSUMF ¶ 20), and even as a Board member, Jay Fischer claims that he did not participate in any discussions regarding the approval or terms of a collective bargaining agreement or vote regarding a new collective bargaining agreement. (Def.'s Mot. Ex. 1, Fischer Dep. at 151–52.)

In addition to these denials, the conduct of the parties prior to the signing of the 1997 Agreement provides little basis upon which to infer an unequivocal intent to be bound. The TCAA negotiated its first collective bargaining agreement with the BAC International in 1985. (Def.'s Mot. Ex. 5, Fischer Decl. at 4.) According to Jay Fischer, Fischer Tile did not participate in the negotiations that resulted in

that agreement, did not delegate its bargaining authority to the TCAA for these negotiations, never considered itself bound by the 1986 agreement, and never abided by its provisions. (*Id.*) The 1986 agreement was renewed in 1991, and again, there is no evidence that defendant abided by its provisions, or for that matter, by the provisions of the 1997 Agreement. *See Glueckert Funeral Home,* 155 F.3d at 867. Moreover, neither the 1986 nor the 1991 agreement contained an opt-out provision. (Def.'s Mot. Ex. 2, Lippert Dep. at 80–81; Plaintiffs' Statement of Material Facts as to Which There is No Genuine Issue ¶ 5.)

Finally, Jay Fischer claims that he sent the October 20, 1999 letter notifying the BAC International of its withdrawal from the TCAA Agreement "just to be safe" (Def.'s Mot. Ex. 1, Fischer Dep. at 48) after he first learned of BAC's claim that all TCAA members were bound by the Agreement. (SSUMF ¶ 16.) *See Glueckert Funeral Home,* 155 F.3d at 868. While the language of this letter may be construed, as argued by plaintiffs (Pls.' Opp. at 16), as evidence that defendant must have considered itself to have been bound by the Agreement, for otherwise there would have been no reason to send the October 20 letter, this inference cannot be embraced at this stage given Fischer's explanation for sending the letter.[13]

## II. Fischer Tile's Local Agreements

Article VII, Section A of the 1997 TCAA Agreement provides:

---

**13.** Plaintiffs also read too much into an October 17, 2000 letter from defendant to TCAA. The statement by defendant that it "withdrew any and all authority which TCAA *may have had* to negotiate on our behalf" is not an acknowledgment that TCAA had authority to negotiate on defendant's behalf prior to the October 20, 1999 letter. Further, while the letter directs TCAA to "notify ... [defendant]

at once and remove ... [defendant] from the active members rolls of the Association" if it is *"incorrect"* in its understanding that membership in TCAA does not automatically grant bargaining rights to TCAA, this language cannot be construed as an admission by defendant that it was in fact "incorrect." (Pls.' Opp. Ex. A, Fischer Dep. Ex. 26 (emphasis added).)

Whenever the Employer participates directly in local negotiations, they shall be affected by the events which occur during that process including any economic action and they shall be bound to the terms of any agreement that is consummated from such negotiations, which are not in conflict with the provisions of this Agreement.

Thus, as plaintiffs' note, pursuant to the 1997 TCAA Agreement, employers that have signed or directly participated in a local collective bargaining agreement governing the area where its work is performed are bound by that local agreement unless the terms of the agreement conflict with the provisions of the 1997 TCAA Agreement. (Pls.' Opp. at 18.) Under Section B, however, if the employer is not bound by an agreement for an area where it is working, it must pay its home local trust funds for its employees' benefits and if the out-of-area agreement provides for higher benefit contributions than its home local agreement, the difference must be paid to the IPF. (TCAA Agreement, Art. VII, Section B.)

Defendant argues that it was bound to collective bargaining agreements for the work performed by its employees outside its home area, and as a result, it falls within Section A of the TCAA Agreement and has no contractual liability to the IPF. Fischer Tile alleges that it had both an oral and a side letter agreement with BAC local unions for the performance of work outside the Sacramento Area Counties. (Def.'s Mem. at 16.) Both agreements provided that Fischer Tile would abide by all the terms and conditions of its collective bargaining agreement with BAC Local

29 (negotiated by ATCONC) for work performed in designated Bay Area counties outside its home local area.[14] (Def.'s Mot. Ex. 1, Fischer Dep. Ex. 23; SSUMF ¶¶ 33–36.)

Plaintiffs argue that neither the side letter agreement nor the oral agreement with the local unions absolves Fischer Tile of liability under the TCAA Agreement because they conflict with the TCAA Agreement, or alternatively, did not exist, expired soon after they began, or were invalid and ineffective during the January 1, 1997 to December 31, 1999 period covered by the audit. (Pls.' Opp. at 18.) While Fischer Tile's oral and written agreements do not conflict with the TCAA Agreement, the Court cannot conclude that either was valid and in force during the relevant time period, for the writing requirement of section 302(c)(5)(B) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 186(c)(5)(B), renders any oral agreement invalid as a matter of law, and factual disputes prevent the Court from holding that Fischer Tile's written agreements effectively relieved it of its liability to the IPF.

The oral and written agreements allow Fischer Tile to pay Sacramento rates wherever it works—even in areas with higher prevailing wages. Plaintiffs argue that this practice conflicts with the TCAA Agreement which requires that employers pay into the IPF the differential between the home local rates and the prevailing rates where the work is performed. (Pls.' Opp. at 19–20.) However, the requirement that the differential be paid into the IPF is contained in Section B of Article VII and

---

**14.** This argument, even if meritorious, cannot completely resolve the matter before the Court since the agreements cover only a portion of the benefits at issue. The written agreement applied to only eight of the thirty counties outside the Sacramento area that are covered by the audit. (Pls.' Opp. Ex. A, Fischer Dep. Ex. 23.) The oral agreement applied to the same eight counties and five additional Bay Area counties. (Pls.' Opp. Ex. A, Fischer Dep. at 122.)

**58**

applies only where an employer is not bound to an agreement in the area where it is working. The requirement is not applicable to Fischer Tile if it was bound to local agreements and covered by Section A. There is nothing in Section A that suggests that local agreements negotiated by employers must meet the requirements of Section B. Consequently, the written and oral agreements do not necessarily conflict with the TCAA Agreement.

■ The oral agreement, however, is not valid because it violates the writing requirement of section 302(c)(5)(B) of the LMRA. 29 U.S.C. § 186(c)(5)(B). Section 302 forbids employers from transferring value to union representatives in order "to inhibit corrupt practices in the administration of employee welfare funds established through the collective bargaining process." *Maxwell v. Lucky Constr. Co.,* 710 F.2d 1395, 1398 (9th Cir.1983). A relevant exception to this prohibition, contained in section 302(c)(5), allows employers to contribute to union trust funds established for the sole and exclusive benefit of employees and their dependents where the basis on which the employer makes trust contributions is specified in a written agreement. 29 U.S.C. § 186(c)(5)(B). Defendant's oral agreement covering work performed outside its home area of Sacramento is just the type of agreement that section 302 is designed to prevent.

Defendant argues that the oral argument is "a mutually agreed expansion of the area jurisdiction of a collective bargaining agreement" and that "enforcing the agreement would be within the reasonable expectations of all parties." (Def.'s Reply at 13.) However, neither the fairness of the agreement nor the knowledge and participation of the affected employees are sufficient to excuse the writing requirement. *Maxwell,* 710 F.2d at 1398. Moreover, none of the cases cited by defendant deals with an agreement covered by section 302 of the LMRA (*see* Def.'s Mem. at 16), and none applies the principles of equitable estoppel where an oral agreement is involved. (*See* Def.'s Reply at 13.) [15] Consequently, Fischer Tile cannot rely on the oral agreement to protect it from liability to the IPF.

■ In addition, factual disputes prevent the Court from determining whether Fischer Tile's written agreement was valid during the period in question. The written side letter agreement was signed by BAC Local 29 on November 12, 1992 and by BAC Local 19(3) on January 22, 1993. The side letter states that it "will remain in effect concurrent with Fischer Tile and Marble, Inc.'s agreement with BAC Local 29." (Def.'s Mot. Ex. 1, Fischer Dep. Ex.

---

15. Defendant's reliance on *Alaska Trowel Trades Pension Fund v. Lopshire,* 103 F.3d 881 (9th Cir.1996), to support the validity of the oral agreement based on the application of the doctrine of equitable estoppel is inapposite. In that case, the court found that an employer's adherence to a contract that was no longer in force bound the employer through the application of equitable estoppel. Significantly, however, in *Alaska Trowel Trades* there was an existing written contract between the employer and the union for the work being performed which the court found satisfied the writing requirement of Section 302(c)(5)(B) and "provided a sufficient safeguard against the illegal payments § 302(c)(5)(B) intended to prevent" despite the fact that it was no longer in force. *Id.* at 883. If the writing requirement had not been satisfied, the application of the doctrine of equitable estoppel would have compelled an illegal act. *Id.* (" 'the doctrine of estoppel cannot be invoked to compel … an illegal act' ") (quoting *Thurber v. Western Conference of Teamsters Pension Plan,* 542 F.2d 1106, 1108 (9th Cir.1976).) Such is the situation here since defendant has not satisfied the writing requirement. Consequently, the doctrine cannot be invoked.

23.) At the time the side letter was finalized, Fischer Tile had a collective bargaining agreement with BAC Local 29 that extended until March 30, 1993. (*See* Pls.' Opp. Ex. A, Fischer Dep. Exs. 14, 15.) That agreement was to remain in effect from year to year unless one of the parties to the agreement served notice to the other of its desire to terminate the agreement. (Pls.' Opp. Ex. A, Fischer Dep. Ex. 14 at 24.) While no evidence of a notice to terminate was presented to the Court, the subsequent collective bargaining agreement is dated April 1, 1993—suggesting a one-day lapse in Fischer Tile's agreement with BAC Local 29. (Pls.' Opp. Ex. A, Fischer Dep. Ex. 18.) Moreover, an August 19, 1993 letter confirmed that it applied retroactively to April 1, 1993 and described it as "comprehensive." (Pls.' Opp. Ex. A, Fischer Dep. Ex. 17.)

Plaintiffs argue the one-day lapse and the characterization of the April 1, 1993 agreement as "comprehensive" indicate that the 1991 collective bargaining agreement, and as a result, the side agreement, expired on March 30, 1993. Defendant argues that the 1991 collective bargaining agreement never terminated, it was modified, and it was renewed by the parties without interruption until 2000. (Pls.' Opp. Ex. A, Fischer Dep. at 161; *see also* Def.'s Mot. Ex. 4, Zehm Dep. at 110–12; Def.'s Mot. Ex. 5, Haversack Dep. at 19–20.) The parties also dispute whether defendant or other ATCONC employers adhered to the terms of the side agreement. (*See* Def.'s Mem. at 19; Plaintiffs' Statement of Material Facts as to Which There is a Genuine Issue ¶¶ 43, 49.) Consequently, the evidence as to employer practice is inconsistent and thus fails to prove that the side agreement was effective during the relevant time period.

As a result of these disputed issues of fact, the Court cannot determine whether Fischer Tile was bound to a valid agreement with BAC Local 29 for work performed outside its home area of Sacramento throughout the relevant time period.

## *CONCLUSION*

For these reasons, the cross motions for summary judgment are denied. A separate Order accompanies this Memorandum Opinion.

## ORDER

For the reasons set forth in the Memorandum Opinion accompanying this Order, it is hereby

**ORDERED** that Defendant's Motion for Summary Judgment [41–1] is **DENIED**, it is

**FURTHER ORDERED** that Plaintiffs' Motion for Summary Judgment [40–1] is **DENIED**, and it is

**FURTHER ORDERED** that an initial status conference is scheduled for March 20, 2003 at 11:00 a.m.

**SO ORDERED.**