Frank J. PROCHASKA, Plaintiff–Appellant Cross–Appellee,

v.

Francis H. MARCOUX, Defendant–Appellee Cross–Appellant.

Nos. 79–1347, 79–1348.

United States Court of Appeals,
Tenth Circuit.

Sept. 9, 1980.

Rehearing Denied Nov. 10, 1980.

Joseph P. Jenkins, Estes Park, Colo., for plaintiff–appellant. (Excused from oral argument).

David R. Brougham of Yegge, Hall & Evans, Denver, Colo., for defendant–appellee.

Before BARRETT, DOYLE and LOGAN, Circuit Judges.

BARRETT, Circuit Judge.

Frank J. Prochaska (Prochaska) appeals an order and judgment granting Francis Marcoux' (Marcoux) motion for summary judgment. Prochaska initiated the action on July 3, 1978 seeking compensatory and exemplary damages for Marcoux' alleged violation of his civil rights under 42 U.S. C.A. § 1983. A brief summary of the facts will facilitate our appellate disposition.

Marcoux is a wildlife conservation officer with the Colorado Division of Wildlife as-

signed to the Estes Park area of Colorado. Marcoux' duties as a wildlife officer include law enforcement, game management, fish management, and other duties related to management. As a wildlife conservation officer Marcoux is empowered, and obligated to request the production of hunting and fishing licenses (C.R.S. 1973, as amended, § 33–6–110). Marcoux is further empowered and obligated, as a wildlife conservation officer, to stop and board any boats and vessels (C.R.S. 1973, as amended § 33–31–111) operating within the waters of Colorado, unless otherwise exempt, to ascertain if the boat or vessel is properly registered and properly equipped with safety equipment including sounding devices and fire extinguishers, in accordance with the laws of Colorado.

On June 28, 1976, Marcoux, while on routine patrol, observed Prochaska operating his boat on Lake Estes without a current 1976 registration sticker. Since Marcoux had been making his patrol in his four wheel drive pickup, and a patrol boat was not available, he borrowed a boat from a nearby marina operator to go on the lake to check Prochaska's registration, his fishing license, and safety gear.

Upon reaching Prochaska's boat, Marcoux checked his fishing license and safety equipment. In checking Prochaska's fishing license and his boat for safety equipment, Marcoux remained in his own boat, did not enter Prochaska's boat or search it, and only visually examined it. After determining that Prochaska had a valid fishing license but that he was operating his boat without a sounding device and fire extinguisher, in violation of the laws of Colorado, Marcoux told Prochaska that he would have to issue a citation for not having the proper safety equipment in the boat and that Prochaska would have to accompany him back to the boat docks.

After returning to the dock, Marcoux cited Prochaska for "Operating a vessel without Proper Safety Equipment; To Wit, No Fire Extinguisher, No Sounding Device". Prochaska originally refused to sign the citation; however, he signed it after he was placed under arrest.

After Prochaska signed the citation, Marcoux inquired about the boat registration. Prochaska responded that he did have a temporary registration for the boat, and that although he did not have it with him, he would bring it with him to court when he was to appear for the safety violation charges set forth in the citation.

Prior to Prochaska's scheduled court appearance, Marcoux telephoned the boat division of the Division of Parks and Outdoor Recreation to determine if Prochaska's boat was properly registered. Upon being informed that the boat was not registered, Marcoux prepared a second citation charging Prochaska with operating a vessel without a proper registration.

On July 2, 1976, the date of Prochaska's scheduled court appearance, Marcoux approached Prochaska in the courthouse hallway and handed him the second citation he had prepared for operating a vessel without a proper registration. When Prochaska immediately produced a current, valid temporary registration, Marcoux went directly to the Assistant District Attorney who thereafter dismissed the charge in open court. Subsequent thereto, Prochaska proceeded to trial. He was convicted for operating a vessel in Colorado without proper and adequate safety equipment. His conviction was affirmed on appeal.

On July 3, 1978 Prochaska filed a civil rights action against Marcoux, alleging, *inter alia*: Marcoux's actions in citing him for operating a vessel without proper safety equipment were undertaken maliciously and without probable cause; Marcoux' actions were accompanied by an abusive and arrogant manner; Marcoux' actions deprived him of his right to be secure against unreasonable searches and seizures, the right not to be deprived of life, liberty, or property without due process of law, and the right of an individual to be free from unreasonable interference by a police officer. Prochaska sought compensatory damages of $50,000 and punitive damages of $50,000.00.

In answer, Marcoux alleged that Prochaska had failed to state a claim cognizable under the civil rights act and that his actions were predicated on probable cause and undertaken in good faith.

Subsequent to depositions being taken by both parties, Marcoux filed a motion for summary judgment and memorandum in support thereof on January 2, 1979. On February 21, 1979, more than six weeks after Marcoux had filed his motion for summary judgment and supporting memorandum, and at a time when Prochaska had failed to either file a brief or affidavit in opposition to same, a hearing was held before the Court on Marcoux' motion for summary judgment. At the conclusion of the hearing, summary judgment was entered in favor of Marcoux, the complaint was dismissed, and costs of the action were assessed against Prochaska. Marcoux' subsequent motion for attorney fees was, however, denied.

On appeal Prochaska contends: (1) the Court erred in granting Marcoux' motion for summary judgment; (2) the stop and search of his motor boat was violative of the Fourth and Fourteenth Amendments; (3) there was not probable cause for charging him with operating a vessel without a proper and valid registration; and (4) his constitutional rights were violated under the proscriptions of the Civil Rights Act.

Marcoux cross–appeals the denial of his request for attorney fees.

## I.

Prochaska contends the Court erred in granting Marcoux' motion for summary judgment. Prochaska argues summary judgment was improper herein since "there are several questions of material fact that cannot be resolved on a motion for summary judgment, such as the veracity of Marcoux in attempting to justify his random stop——that he had called unknown persons attempting to check out the existence or non–existence of a temporary registration sticker . . . [and] . . . whether the officer acted in a reasonable manner by issuing a second citation without further information would be a question for the finder of fact". [Appellant's Brief at pp. 13–14].

■ On appeal from an order granting a motion for summary judgment, the record is reviewed in light most favorable to the opposing party. *Security National Bank v. Belleville Livestock Commission Co., Inc.,* 619 F.2d 840 (10th Cir. 1980). Where different ultimate inferences may properly be drawn, the case is not one for summary judgment, *Security National Bank, supra,* and questions of intent, which involve intangible factors including witness creditability, are matters for consideration of the fact finder after a full trial. *Buell Cabinet Company, Inc. v. Sudduth,* 608 F.2d 431 (10th Cir. 1979).

■ Parties like Prochaska, however, cannot rest on mere allegations or denials, but must, by affirmative response in affidavits or otherwise, set forth specific facts showing that there is a genuine issue for trial. *Security National Bank, supra.*

■ Applying these standards, we hold the Court properly granted Marcoux' motion for summary judgment. Nothing within Prochaska's deposition supported his allegation that Marcoux acted in an abusive and malicious manner in derogation of his constitutional rights. Furthermore, nothing within Prochaska's deposition rebuts Marcoux' depositional assertions that he properly cited Prochaska for operating a vessel without proper safety equipment in violation of the laws of Colorado.

Prochaska's failure to oppose Marcoux' motion for summary judgment is not saved by his allegations on appeal that "several material questions of fact" remain unanswered relative to the veracity of Marcoux' justification of stopping Prochaska, and whether Marcoux acted in a reasonable manner in issuing a second citation. This is particularly true herein, inasmuch as: the record clearly establishes the lack of any additional questions of fact; Prochaska acknowledges that he did not have a current 1976 registration sticker on his boat when Marcoux approached him; and there was no fire extinguisher in his boat, constituting a violation of the laws of Colorado.

## II.

Prochaska contends it is an unreasonable search and seizure under the Fourth and Fourteenth Amendments to stop a motor boat, being operated on a public lake, for the purpose of checking the existence of safety equipment, where there is neither probable cause to believe nor reasonable suspicion that the boat is being operated contrary to state laws relative thereto. In support of this contention, Prochaska relies on the recent Supreme Court decision of *Delaware v. Prouse,* 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979).

In *Delaware v. Prouse, supra,* the Court observed:

The Fourth and Fourteenth Amendments are implicated in this case because stopping an automobile and detaining its occupants constitute a "seizure" within the meaning of those Amendments, even though the purpose of the stop is limited and the resulting detention quite brief. *United States v. Martinez–Fuerte,* 428 U.S. 543, 556–558, [96 S.Ct. 3074, 3082–3083, 49 L.Ed.2d 1116] (1976); *United States v. Brignoni–Ponce,* 422 U.S. 873, 878, [95 S.Ct. 2574, 2578, 45 L.Ed.2d 607] (1975); cf. *Terry v. Ohio,* 392 U.S. 1, 16, [88 S.Ct. 1868, 1877, 20 L.Ed.2d 889] (1968). The essential purpose of the proscriptions in the Fourth Amendment is to impose a standard of "reasonableness" upon the exercise of discretion by government officials, including law enforcement agents, in order " 'to safeguard the privacy and security of individuals against arbitrary invasions. . . .' " *Marshall v. Barlow's, Inc.,* 436 U.S. 307, 312, [98 S.Ct. 1816, 1820, 56 L.Ed.2d 305] (1978), quoting *Camara v. Municipal Court,* 387 U.S. 523, 528, [87 S.Ct. 1727, 1730, 18 L.Ed.2d 930] (1967). Thus, the permissibility of a particular law–enforcement practice is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests. Implemented in this manner, the reasonableness standard usually requires, at a minimum, that the facts upon which an intrusion is based be capable of measurement

against "an objective standard," whether this be probable cause or a less stringent test. [Footnotes omitted].

440 U.S. at pp. 653–654, 99 S.Ct. at p. 1396.

Under *Delaware v. Prouse, supra,* the stopping of an automobile and the detention of its occupants, constituting a seizure, is proper and considered reasonable if there is an articulable and reasonable suspicion that either the motorist is unlicensed or the vehicle unregistered, or that either the vehicle or occupant is otherwise subject to seizure for violating the law.

■ Applying *Delaware v. Prouse, supra,* to the instant case, it is clear that Marcoux had "articulable and reasonable suspicion" to believe that Prochaska's boat was not properly registered when he did not see a current Colorado registration sticker affixed to the boat. Thus, Marcoux was not only empowered but obligated to question Prochaska. Marcoux' deposition was unrebutted in that: he observed Prochaska's boat on Lake Estes during the course of his routine patrol as a Colorado Wildlife Conservation Officer with the Colorado Division of Wildlife; he observed Prochaska fishing on Lake Estes in a boat that did not have a 1976 registration sticker on it; he thereafter went out on the lake for the specific purpose of checking the boat registration; and after making boat contact he routinely inquired of Prochaska and checked his boat for fishing licenses and safety gear. Under these circumstances, we cannot accept Prochaska's assertion that Marcoux' search and seizure was unreasonable under the Fourth and Fourteenth Amendments.

It may very well be true, as Prochaska argues, that it is unlawful "to stop a motor boat, being operated on a public lake, for the purpose of checking the equipment where there is neither probable cause to believe nor reasonable suspicion that the boat is being operated contrary to state laws governing the operation of motor boats". This argument, however, rings hollow when measured against the facts presented by this record: Marcoux observed a boat on Lake Estes without a current 1976 registration sticker; he went onto the lake to check the registration and to effectuate a "boat contact" which routinely included checking for fishing licenses and safety gear, and is considered "an all-encompassing contact". In so doing, Marcoux was clearly acting in accordance with the laws of Colorado under which "Every wildlife . . . officer . . . shall have the authority to enforce the provisions of this article and in the exercise thereof shall have the authority to stop and board any vessel subject to the provisions of this article." C.R.S. 1973, as amended § 33–31–111.

Marcoux' actions were therefore in accord with the laws of Colorado and not violative of Prochaska's Fourth Amendment rights. As the Court recently observed in *United States v. Mendenhall,* —— U.S. ——, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980):

The purpose of the Fourth Amendment is not to eliminate all contact between the police and the citizenry, but "to prevent arbitrary and oppressive interferences by enforcement officials with the privacy and personal security of individuals." *United states v. Martinez–Fuerte,* 428 U.S. 543, 554, [96 S.Ct. 3074, 3081, 49 L.Ed.2d 1116].

\* \* \* \* \* \*

Moreover, characterizing every street encounter between a citizen and the police as a "seizure," while not enhancing any interest secured by the Fourth Amendment, would impose wholly unrealistic restrictions upon a wide variety of legitimate law enforcement practices. The Court has on other occasions referred to the acknowledged need for police questioning as a tool in the effective enforcement of the criminal laws. "Without such investigation, those who were innocent might be falsely accused, and those who were guilty might wholly escape prosecution, and many crimes would go unsolved. In short, the security of all would be diminished. *Haynes v. Washington,* 373 U.S. 503, 515, [83 S.Ct. 1336, 1344, 10 L.Ed.2d 513]." *Schneckloth v. Bustamonte, supra,* 412 U.S. 218 at 225, 93 S.Ct. 2041 at 2046, 36 L.Ed.2d 854. —— U.S. —— – ——, 100 S.Ct. at 1877.

## III.

Prochaska contends that Marcoux lacked probable cause for charging him with operating a vessel without a proper and valid registration. This contention is frivolous.

Prochaska admits in his brief that he was operating his boat on Lake Estes without a current 1976 registration sticker. It is also uncontested that after issuing Prochaska a citation, Marcoux was told by the Denver Office of the Parks and Recreation Boat Registration Department that it had no record of the number obtained from Prochaska's boat and that a cross–check of Prochaska's name showed that no boat was registered to him. Thus, the fact that Marcoux thereafter prepared a second citation charging Prochaska with operating a boat without proper and valid registration, is of no moment, when, as here, Marcoux promptly caused to have the citation dismissed after Prochaska displayed a temporary registration which apparently had not been recorded by the Boat Registration Department. Under these circumstances, we cannot hold that Marcoux lacked probable cause to charge Prochaska with operating a vessel without a proper and valid registration. Furthermore, in our view, the expedient manner in which Marcoux proceeded to cause the citation to be dismissed after Prochaska displayed the temporary registration to him, defies the interpretation of any maliciousness or bad faith by Marcoux in his issuance of the second citation. Marcoux' actions did not give rise to a claim cognizable under 42 U.S.C.A. § 1983.

## IV.

Marcoux contends in his cross–appeal that the trial court improperly denied his motion for attorney fees, requested "pursuant to 42 U.S.C. § 1988 and the Order of this Court."

In denying Marcoux' motion the Court ruled:

> Upon the finding that the above captioned action was not frivolous, unreasonable or without foundation, it is hereby

ORDERED that defendant's Motion For Attorney's Fees is denied.

[R., Vol. I, at p. 18].

We recently considered the propriety of awarding attorney fees to a defendant in a civil rights action. In *Charles W. Morgan III and Leslie Karen Morgan v. Brittany Apartments and Parceners, Ltd.*, No. 79–1230 (Unpublished, February 22, 1980), we observed "that the applicable standard in ascertaining whether a fee should be awarded to a *defendant* . . . depends on whether the action is clearly frivolous, vexatious or brought for harassment purposes." [Sl. op. at p. 5]. We there cited to *Christiansburg Garment Co. v. Equal Employment Opportunity Commission*, 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978) for the proposition that a district court may, in its discretion, award attorney's fees to a prevailing defendant in a Title VII case upon a finding that the plaintiff's action was "frivolous, unreasonable, or without foundation." We opined and concluded in *Morgan v. Brittany, supra,* that the District Court, "made no effort to determine whether the lawsuit was frivolous, unreasonable or without foundation". Thus, we vacated the award of attorney fees to the defendant and remanded the case for further consideration in accordance with *Christiansburg, supra.*

The instant case is, in our view, clearly distinguishable from *Morgan v. Brittany, supra,* where the District Court failed to apply the *Christiansburg, supra,* standard. In the case at bar, we conclude that the District Court erred in finding that Prochaska's action was not "frivolous, unreasonable or without foundation", under the *Christiansburg* standard.

In *Christiansburg, supra,* the Supreme Court, in addressing the applicable standard, observed:

> To take the further step of assessing attorney's fees against plaintiffs simply because they do not finally prevail would substantially add to the risks inhering in most litigation and would undercut the efforts of Congress to promote the vigor-

854

ous enforcement of the provisions of Title VII. Hence, a plaintiff should not be assessed his opponent's attorney's fees unless a court finds that his claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so. And, needless to say, if a plaintiff is found to have brought or continued such a claim in *bad faith*, there will be an even stronger basis for charging him with the attorney's fees incurred by the defense.

434 U.S. at p. 422, 98 S.Ct. at p. 701.

■ This standard was recently reiterated in *Roadway Express, Inc. v. Piper*, —— U.S. ——, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980) in which the Court stated:

Prevailing plaintiffs in civil rights cases win fee awards unless "special circumstances would render such an award unjust," *Newman v. Piggie Park Enterprises*, 390 U.S. 400, 402 [, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263] (1968) (*per curiam*), but a prevailing defendant may be awarded counsel fees only when the plaintiff's underlying claim is "frivolous unreasonable, or groundless." *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 422 [, 98 S.Ct. 694, 700, 54 L.Ed.2d 648] (1978).

—— U.S. ——, 100 S.Ct. at 2462.

Applying this standard to the facts herein we hold that Prochaska's claim was clearly "frivolous, unreasonable or groundless". Marcoux' unrebutted testimony is that he checked out Prochaska's boat because it did not have a current 1976 registration sticker, and that in conjunction with the "boat contact" he routinely checked for fishing licenses and boat safety gear. Thereafter Prochaska went to trial and was convicted of violating Colorado's boating safety laws. This conviction was affirmed, after which Prochaska initiated this civil rights action against Marcoux for allegedly violating his constitutional rights.

Prochaska's complaint alleges that Marcoux' actions were performed "knowingly, intentionally, and maliciously, in utter and callous disregard of the rights of plaintiff [Prochaska]." Prochaska's deposition, however, fails to establish or reinforce these allegations. On the contrary, Prochaska, within his deposition, acknowledged that he did not have a fire extinguisher or sounding device in his boat when Marcoux approached and that he was aware that under the laws of Colorado he was required to have such equipment. Prochaska also acknowledged that Marcoux did not actually enter his boat and that "All I know is that he was trying to determine whether I had those pieces of equipment [safety]."

Affirmed as to Prochaska.

Reversed and Remanded as to Marcoux for the calculation and award of attorney fees.

WILLIAM E. DOYLE, Circuit Judge, concurring in part and dissenting in part.

I concur in the affirmance of the trial court's judgment in favor of the defendant–appellee in the case in chief. In concurring I note that the plaintiff's case is not the strongest ever to come to my attention. On the other hand, it is not the weakest. One problem from which it suffers is that the basic set of facts constitutes a lot of ado about nothing.

It was basically of little moment. It is not designed to stir up the sympathy or compassion of any court. A little common sense on the part of the officer and on the part of the plaintiff could have solved it. Perhaps the factor which produced it was the apparent belief of the plaintiff that the officer and Harris, the operator of the Marina, were in cahoots. We will never know for sure whether this was the case but the evidence points in the direction of their not being in a conspiracy against the plaintiff. So it likely started on a misconception. Another problem was the filing by the officer of a second charge and doing so without checking out the registration. Even if this was a good faith mistake, it started the trouble.

The trial court found and determined that the *defendant appellee was not entitled to an attorney's fee; that the action of plaintiff was not frivolous, unreasonable, or without foundation.* This is a matter which

is properly for the trial court to determine. For this court to refind the facts and reverse on the ground that the cause was frivolous calls for the application of a plain error standard. This was not the condition. (With all respect to my brother.)

The law is not obscure. *Christiansburg Garment Co. v. EEOC*, 432 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648, together with *Newman v. Piggie Park Enterprises*, 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263, set down the governing law and demonstrated the vast difference between an award of fees to a plaintiff and an award to a defendant. If the majority were to follow the teachings of these cases we would be unanimous in our judgment. But, the majority opinion is even out of harmony with the decision of this court in *E. E. O. C. v. Fruehauf Corporation*, 10 Cir., 609 F.2d 434.[1] It would also undermine this court's decision in *Morgan v. Brittany Apartments and Parceners, Ltd.*, No. 79–1230 (unpublished to date, but due to be published immediately).

There is reason to believe that the case before us is a first in the matter of award of a fee to a defendant. Surely if there were even one authority favoring the stand taken, it would be cited. Judge Barrett would have discovered it. I am not one to object to pioneering. It is the particular effort that bothers me. If a case is to be considered frivolous based on the length of the chancellor's foot, so to speak, the results are going to be unfortunate.

---

1. In that Title VII case this court said: "There is nothing in the record * * * before us to support the trial court's finding that the action was frivolous from its inception, or that in prosecuting the action EEOC was motivated by something other than good faith, presumably bad faith. *Cottrell v. Newspaper Agency Corporation*, 590 F.2d 836, 839 (10th Cir. 1979.)"