In re Mark A. JONES, Debtor.

Mark A. Jones, Debra L. Jones, Plaintiffs,

v.

Novastar Mortgage, Inc., Defendant.

Bankruptcy No. 01–23555–7.
Adversary No. 02–6022.

United States Bankruptcy Court, D. Kansas.

Sept. 11, 2003.

Michael D. Doering, Doering & Associates, P.C., Kansas City, MO, for Defendant.

Kenneth M. Gay, Consumer Advocate LLC, Lenexa, KS, for Plaintiffs.

### ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT[1]

JOHN T. FLANNAGAN, Bankruptcy Judge.

Defendant Novastar Mortgage, Inc., seeks summary judgment on the plaintiffs' claims under the Truth in Lending Act for rescission of their mortgage transaction and under the Kansas Consumer Protection Act for Novastar's engaging in an unconscionable act or practice, as well as on its counterclaims against debtor Mark A. Jones objecting to the dischargeability of its claim against him and to his receiv-

---

1. The defendant appears by counsel Michael D. Doering of Doering & Associates, P.C., of Kansas City, Missouri. The plaintiffs appear by counsel Kenneth M. Gay of Consumer Advocate, L.L.C., of Lenexa, Kansas.

ing a discharge. After reviewing the materials submitted and the applicable law, the court concludes that Novastar's entire motion must be denied.

In 2001, Jones borrowed money from Novastar, and he and his wife gave a mortgage to secure the loan. The Joneses claim that Novastar failed to supply them all the copies of certain documents that they were entitled to receive under the Truth in Lending Act, so they had more than the normal three days to rescind or cancel the transaction. They have submitted affidavits swearing that they received only one copy of two documents. Novastar disputes this claim, relying on the Joneses' signatures on one of the documents attesting that they had each received the required copies of it, and its belief that it was not required to give each of them a copy of the other. The Joneses contend they timely notified Novastar that they chose to exercise their right to rescind, as they could do if they had not received the required copies.

The Joneses also claim that Novastar violated the Kansas Consumer Protection Act by making the loan to Jones when there was no reasonable probability that he could pay the debt in full. Jones alleges that he wanted to get a loan based on the cash flow through his bank account, rather than his net income, and that he provided truthful information about his financial circumstances to the mortgage broker who arranged the loan from Novastar. Novastar responds that the only information it received in connection with the loan indicated that Jones had substantial monthly income that would have enabled him to repay the loan.

Novastar asserts two counterclaims against debtor Jones. First, it claims his debt to it is nondischargeable under 11 U.S.C.A. § 523(a)(2)(B) because he gave it two loan applications that falsely reported his monthly income and employment status, and a profit and loss statement supporting the income figure. Jones responds that he signed a blank loan application for the mortgage broker who was supposed to complete the application based on the information Jones had given him. He denies that he had anything to do with any profit and loss statement that Novastar might have received.

Novastar's second counterclaim is that Jones should be denied a discharge because he made a false oath in his bankruptcy case in violation of 11 U.S.C.A. § 727(a)(4)(A) when, in support of the complaint that commenced this proceeding, he swore that he was and for an extended time had been substantially unemployed when he obtained the loan from Novastar. If the loan applications were true, Novastar argues, then this statement must have been false. Jones's defense is that while the loan applications contained false information, he did not supply that false information to Novastar or anyone else. He implicitly accuses the mortgage broker of putting the false information on the loan applications.

Novastar seeks summary judgment in its favor on all these claims. However, as the descriptions of the claims should make clear, the Joneses have raised factual questions that preclude summary judgment on each of the claims. While Novastar might prevail at trial, its materials do not establish that no reasonable fact finder could believe the Joneses' conflicting allegations and evidence, and decide one or more of the claims in their favor. Consequently, Novastar's motion must be denied.

## FACTS

For purposes of this opinion, only the following facts and allegations are relevant.

In March 2001, debtor Mark Jones borrowed $267,750 from Novastar to refinance a home mortgage and obtain some cash.[2] To secure the loan, Jones and his wife gave Novastar a mortgage on their home.[3] At the closing on the transaction, the couple signed a variety of documents. Under the federal Truth in Lending Act, commonly known as the TILA, they had the right to rescind the loan,[4] and some of the documents they signed affected that right. One form told them about their right to rescind or cancel the transaction, and they both signed it under the statement, "ON THIS DATE THE UNDERSIGNED EACH RECEIVED TWO (2) COMPLETED COPIES OF THE NOTICE OF OPPORTUNITY TO CANCEL."[5] Despite having signed this Notice, Jones and his wife both swear that at the end of the closing, Jones alone was given a packet of documents, which they were told was their copies of the closing documents, and that the packet included only one copy of the Notice.[6] A second form that the couple signed contained certain disclosures required by the TILA, and they signed it under the statement, "THE UNDER-SIGNED ACKNOWLEDGE RECEIVING AND READING A COMPLETED COPY OF THIS DISCLOSURE."[7] As with the Notice, Jones and his wife both swear that the closing packet given to them contained only one copy of the Disclosure.[8] Under the TILA and part of its implementing regulations (all of which are called "Regulation Z"[9]), because they were each giving Novastar the mortgage on their home, Jones and his wife were each entitled to receive two copies of the Notice and one copy of the Disclosure.[10]

Jones contends that at the time of the Novastar loan transaction, he "was substantially unemployed and had been substantially unemployed for an extended period of time."[11] Nevertheless, he contacted mortgage broker John Alexander of Morrison Capital Corporation to see about refinancing the couple's home mortgage and obtaining some cash.[12] Jones claims he asked Alexander to find a loan based on cash flow through a bank account rather than income, and that Alexander told him he had done so.[13]

2. *See* Exhibit A to Defendant's Motion for Summary Judgment, doc. # 33, filed April 8, 2003; Affidavit of Plaintiff Mark A. Jones, doc. # 39, filed April 23, 2003, at ¶ 3.

3. *See* Exhibit B to Defendant's Motion for Summary Judgment, doc. # 33.

4. *See* 15 U.S.C.A. § 1635.

5. *See* page 1 of Exhibit D to Defendant's Motion for Summary Judgment, doc. # 33, filed April 8, 2003.

6. *See* Affidavit of Plaintiff Mark A. Jones, doc. # 39, filed April 23, 2003; Affidavit of Plaintiff Debra L. Jones, doc. # 40, filed April 23, 2003.

7. *See* page 2 of Exhibit D to Defendant's Motion for Summary Judgment, doc. # 33.

8. *See* Affidavit of Plaintiff Mark A. Jones, doc. # 39, filed April 23, 2003; Affidavit of Plain-

tiff Debra L. Jones, doc. # 40, filed April 23, 2003.

9. 12 C.F.R. Part 226 (2003); *see also* 12 C.F.R. § 226.1(a) (declaring that Part 226 is "known as Regulation Z").

10. *See* 15 U.S.C.A. § 1631(a); Regulation Z §§ 226.17(d) & § 226.23(a) & (b)(1), 12 C.F.R. §§ 226.17(d) & 226.23(a) & (b)(1).

11. *See* Complaint to Enforce the Truth in Lending Act and for Other Relief at ¶ 35, doc. # 1, filed March 27, 2002; Final Pretrial Conference Order at 4, Stipulation (7), doc. # 46, filed August 20, 2003.

12. Affidavit of Plaintiff Mark A. Jones, doc. # 39, ¶¶ 1 & 2.

13. Affidavit of Plaintiff Mark A. Jones, doc. # 39, ¶¶ 2 & 5.

Jones swears he never signed a completed loan application for anyone, although he concedes he signed an incomplete form for Alexander, who told him he would fill it in with information Jones had provided.[14] It appears that Alexander supplied Novastar with two loan applications that reported $7,000 to be Jones's monthly income from employment with Mark Jones Investments.[15] Jones denies that he ever represented himself to Alexander or anyone else as "Mark Jones Investment Company." [16]

Besides the loan applications, the parties have more disputes about materials that Novastar received in support of Jones's loan application and materials that Novastar apparently claims it did not receive even though Jones swears he provided them to Alexander. Novastar has submitted a copy of a purported profit and loss statement for Jones for January and February of 2001.[17] Jones swears that he never gave Alexander a profit and loss statement, and never even had one prepared.[18] On the other hand, Jones claims that he gave Alexander copies of his bank statements for November 1998 through September 2000, and for November through December 2000.[19] Although no copies of these bank statements have been included in the parties' summary judgment materials, Jones asserts in his brief that the statements show that during a twenty-three month period, his bank returned 212 checks for non-sufficient funds; Jones adds that no one from Alexander's company or from Novastar ever asked him any questions about the statements.[20] Finally, Jones suggests that Novastar was obliged to ask him for copies of his tax returns, pointing out that the 1999 federal income tax return for him and his wife shows adjusted gross income of about negative $3,000 and the 2000 return shows adjusted gross income of about $21,000.[21]

## DISCUSSION AND CONCLUSIONS

Rule 56 of the Federal Rules of Civil Procedure governs summary judgment and is made applicable to adversary proceedings by Rule 7056 of the Federal Rules of Bankruptcy Procedure. In articulating the standard of review for summary judgment motions, Rule 56 provides that judgment shall be rendered if all pleadings, depositions, answers to interrogatories, and admissions and affidavits on file show that there are no genuine issues of any material fact and the moving party is entitled to judgment as a matter of law.[22] In determining whether any genuine issues of material fact exist, the Court must construe the record liberally in favor of the party opposing the summary judg-

---

14. Affidavit of Plaintiff Mark A. Jones, doc. # 39, ¶ 10.

15. See Exhibit K (dated "4–4–01") to Defendant's Motion for Summary Judgment, doc. # 33; Exhibit A (dated "11–20–2000") to Reply Memorandum in Support of Plaintiffs' Objection to Defendant's Motion for Summary Judgment, doc. # 43.

16. Affidavit of Plaintiff Mark A. Jones, doc. # 39, ¶ 11.

17. Exhibit Q to Defendant's Motion for Summary Judgment, doc. # 33.

18. Affidavit of Plaintiff Mark A. Jones, doc. # 39, ¶¶ 12, 13, & 14.

19. Affidavit of Plaintiff Mark A. Jones, doc. # 39, ¶ 7.

20. Memorandum in Support of Plaintiffs' Objection to Defendant's Motion for Summary Judgment, doc. # 38 at 8–9.

21. See Exhibits 11 & 12 to Memorandum in Support of Plaintiffs' Objection to Defendant's Motion for Summary Judgment, doc. # 38.

22. Fed.R.Civ.P. 56(c); Fed. R. Bankr.P. 7056.

ment.[23] An issue is "genuine" if sufficient evidence exists on each side "so that a rational trier of fact could resolve the issue either way" and "[a]n issue is 'material' if under the substantive law it is essential to the proper disposition of the claim." [24]

## I. The Joneses' Claims

### A. The TILA Claim

#### 1. Background of the TILA

■ Some background knowledge about the TILA is helpful when evaluating claims made under it. Congress enacted the TILA to regulate the disclosure of the terms of consumer credit transactions in order "to aid unsophisticated consumers and to prevent creditors from misleading consumers as to the actual cost of financing." [25] Disclosure allows consumers to compare different financing options and their costs.[26] To encourage compliance, TILA violations are measured by a strict liability standard, so even minor or technical violations impose liability on the creditor.[27] The consumer-borrower can prevail in a TILA suit without showing that he or she suffered any actual damage as a result of the creditor's violation of the TILA.[28]

#### 2. TILA provisions and implementing regulations that are relevant to the TILA claim

■ This proceeding involves a non-purchase-money loan[29] secured by the Joneses' home (or "principal dwelling"). In such a transaction, the borrowers have a right to rescind that is established by TILA § 1635. It provides in pertinent part:

**(a) Disclosure of obligor's right to rescind**

Except as otherwise provided in this section, in the case of any consumer credit transaction ... in which a security interest ... is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this subchapter, whichever is later, by notifying the creditor, in accordance with regulations of the Board, of his intention to do so. The creditor shall clearly and conspicuously disclose, in accordance with regulations of the Board, to any obligor in a transaction subject to this section the rights of the obligor under this section. The creditor shall also provide, in accordance with regulations of the Board, appropri-

---

23. *McKibben v. Chubb*, 840 F.2d 1525, 1528 (10th Cir.1988) (citation omitted).

24. *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir.1998).

25. *Morris v. Lomas & Nettleton Co.*, 708 F.Supp. 1198, 1203 (D.Kan.1989) (citing *Mourning v. Family Publ'ns Serv., Inc.*, 411 U.S. 356, 363–69, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973)).

26. 15 U.S.C.A. § 1601(a).

27. *See, e.g., Mars v. Spartanburg Chrysler Plymouth, Inc.*, 713 F.2d 65, 67 (4th Cir.1983)

("To insure that the consumer is protected, as Congress envisioned, requires that the provisions of [the TILA and Regulation Z] be absolutely complied with and strictly enforced").

28. *Herrera v. First Northern Savings and Loan Ass'n*, 805 F.2d 896, 900 (10th Cir.1986).

29. *See* 15 U.S.C.A. § 1635(e)(1) and § 1602(2) (exempting from § 1635 liens against consumer-borrowers' homes that secure the financing of the acquisition or initial construction of the homes).

ate forms for the obligor to exercise his right to rescind any transaction subject to this section.

. . . .

**(c) Rebuttable presumption of delivery of required disclosures**

Notwithstanding any rule of evidence, written acknowledgment of receipt of any disclosures required under this subchapter by a person to whom information, forms, and a statement is required to be given pursuant to this section does no more than create a rebuttable presumption of delivery thereof.

. . . .

**(f) Time limit for exercise of right**

An obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon sale of the property, whichever occurs first, notwithstanding the fact that the information and forms required under this section or any other disclosures required under this part have not been delivered to the obligor, except [the time can be extended further if an agency empowered to do so has instituted a proceeding to enforce the TILA within three years of the transaction and certain other criteria are met].[30]

The Joneses' right to rescind existed, then, for three days after Novastar gave them the required information and documents if it successfully did so, or for up to three years after consummation of the transaction if it did not. There is no indication that Novastar ever gave the Joneses any additional documents after they received the packet of documents at the closing.

The Joneses jointly sent Novastar a notice of their attempt to rescind the transaction many months (but less than three years) after the transaction was consummated.

The Board of Governors of the Federal Reserve System (the "Board" referred to in the statute [31]) has promulgated extensive regulations implementing the TILA,[32] all of which it calls "Regulation Z." [33] Regulation Z § 226.23(a)(1) provides (with exceptions not applicable here): "In a credit transaction in which a security interest is or will be retained or acquired in a consumer's principal dwelling, each consumer whose ownership interest is or will be subject to the security interest shall have the right to rescind the transaction." [34] Section 226.23(b)(1) adds that in such a transaction, "a creditor shall deliver *two copies* of the notice of the right to rescind to each consumer entitled to rescind (one copy to each if the notice is delivered by electronic communication as provided in [another regulation])." [35] In addition, although the required TILA disclosures in other transactions may be made to any borrower who is primarily liable on the debt, when the transaction is rescindable under § 226.23, "the disclosures shall be made to each consumer who has the right to rescind." [36]

3. **Discussion of Novastar's request for summary judgment on the TILA claim**

 Under the statute and regulation, then, both Jones and his wife had the right to rescind the transaction with Novastar, even though only Jones was liable on the debt secured by the mortgage. Consequently, Novastar was obliged not

---

30. 15 U.S.C.A. §§ 1635(a), (c), & (f).

31. TILA § 1602(b), 15 U.S.C.A. § 1602(b).

32. 12 C.F.R. Part 226 (2003).

33. *See* 12 C.F.R. § 226.1(a).

34. 12 C.F.R. § 226.23(a)(1).

35. 12 C.F.R. § 226.23(b)(1) (emphasis added).

36. 12 C.F.R. § 226.17(d).

only to give Jones two copies of the Notice and one copy of the Disclosure, but also to give his wife her own copies. Novastar suggests that the TILA did not require it to give Jones and his wife each a copy of the Disclosure, but to support this argument relies on Regulation Z § 226.15, a provision that applies to open-end credit arrangements, such as credit card plans, rather than to closed-end transactions like the one involved here.[37] For the Joneses' transaction with Novastar, Regulation Z § 226.17(d) clearly required Novastar to provide separate copies of the Disclosure to Jones and to his wife.

 Building on its mistaken notion that it was not required to give the Joneses each a copy of the Disclosure, Novastar then addresses its argument only to the number of copies of the Notice it gave them. Novastar argues that Jones's and his wife's sworn assertions that the packet of documents they received at the closing of their transaction with Novastar contained only one copy of the Notice are insufficient to rebut the presumption created by their signatures on the Notice affirming that they each received two copies of it. While at least one court has apparently granted summary judgment on the ground that a borrower's testimony is insufficient to rebut the presumption pro-

vided by TILA § 1635(c),[38] this court instead agrees with several other courts that have ruled such testimony is sufficient to raise an issue of fact to be decided at trial.[39] In addition, the court notes that unlike the statement on the Notice, the statement on the Disclosure does not clearly indicate that each of the Joneses had received their own copy of the Disclosure but only that they had received at least one copy for the two of them. Therefore, Novastar's form itself leaves some doubt whether each of the Joneses received a copy of the Disclosure.

Novastar seems to suggest that so long as co-borrowers receive at least one copy of each document required by the TILA, the failure to give separate copies to each borrower should not extend the borrowers' rescission period beyond the normal three days. If Jones and his wife conceded that each of them received one copy of the Disclosure and the Notice, the court might be inclined to agree that the rescission period should not be extended because they did not each receive a second copy of the Notice. In that situation, they would each have received all the information mandated by the TILA, and if they wished to rescind, could simply have photocopied the Notice before sending it to Novastar to inform it of that decision.[40] However, the

---

**37.** See 12 C.F.R. § 226.2(20) (defining "open-end credit") & § 226.2(10) (defining "closed-end credit").

**38.** Gaona v. Town & Country Credit, 2001 WL 1640100, *3 (D.Minn.).

**39.** Davison v. Bank One Home Loan Servs., 2003 WL 124542, *4 (D.Kan.); Cooper v. First Government Mortgage and Investors Corp., 238 F.Supp.2d 50, 63–65 (D.D.C.2002); see also Williams v. BankOne (In re Williams), 291 B.R. 636, 647–48 (Bankr.E.D.Pa.2003) (finding debtor's credible trial testimony overcame presumption arising under § 1635(c)); Hanlin v. Ohio Builders and Remodelers, Inc., 212

F.Supp.2d 752, 760–62 (S.D.Ohio 2002) (borrowers' testimony that they did not receive notices required by 15 U.S.C.A. § 1639 rebutted presumption arising under § 1635(c), raising issue for trial).

**40.** See Ramirez v. Household Finance Corp. III (In re Ramirez), Case No. 01–42119–13, Adv. No. 01–7122, Order Granting Summary Judgments at 11–12 (Bankr.D.Kan. May 28, 2003) (Pusateri, J.) (in dicta, asserting that because photocopying is cheap, extending rescission period from three days to three years for failure only to provide second copy of notice of right to rescind as required by Regulation Z would be irrational).

Joneses are claiming they received just one copy of the Disclosure and Notice between them. If that is found at trial to be true, the more significant TILA goal of making sure that each borrower with the right to rescind has personally received all the information necessary to decide whether to rescind would have been defeated. When co-borrowers receive a single copy of the required documents, one of them might more easily frustrate or override the other's desire to rescind than if each had been given his or her own copy. In this regard, it is important to be aware that when two borrowers have the right to rescind a transaction, a valid exercise of the right by either is effective for both of them.[41] The TILA and Regulation Z might easily have declared that co-borrowers who are spouses are entitled to only one set of the required documents between them, but neither the statute nor the regulation does so. Because the right to rescind under § 1635 exists only when borrowers are giving a mortgage on their home to secure a loan, the most common co-borrowers are likely to be a married couple, so it is inconceivable that Congress and the Federal Reserve Board overlooked this situation when they specified that each borrower with the right to rescind must be given his or her own set of the documents containing all the required information.

Novastar contends that Jones's previous experience working as a bank officer from 1974 to 1984, including a period when he was acting as the bank's TILA compliance officer, should excuse any errors it might have made in the transaction with the Joneses because Jones knew all about his rights under the TILA. However, Novastar does not point to anything in the TILA

that establishes a different compliance standard for a lender based on the borrower's knowledge of the TILA. Of course, Jones's experience with the TILA would not excuse Novastar's alleged failure to give Jones's wife all the TILA-required information affecting her independent right to rescind. In addition, in transcript excerpts included in the summary judgment materials, Jones testified that he had forgotten Regulation Z's requirement that borrowers be given two copies of the Notice. The court is certainly unwilling to rule that no reasonable fact finder could believe that Jones had forgotten some of the TILA's nuances in the sixteen to seventeen years since he worked as a bank officer.

Novastar asks the court to decide how it might structure the rescission remedy for the Joneses if it finds that they were entitled to the extended rescission period and so timely exercised their right to rescind. The court believes it would be premature to resolve that question when it may never become necessary to do so. Until it is established that the Joneses timely exercised their right to rescind the transaction with Novastar, the court will not address the consequences of their exercise of the right.

In its reply brief,[42] Novastar states that this court is bound by the decision in *Quenzer v. Advanta Mortgage Corporation (In re Quenzer).*[43] This is a rather commonly-asserted but mistaken understanding of the effect of decisions by district judges in bankruptcy appeals. Because the district judges in the District of Kansas are not bound by *stare decisis*

---

41. 12 C.F.R. § 226.23(a)(4).

42. Reply to Memorandum in Support of Plaintiffs' Objection to Defendant's Motion for Summary Judgment, doc. # 43, at 3.

43. 288 B.R. 884 (D.Kan.2003) (Crow, J.).

to follow one another's decisions, the bankruptcy courts are not bound by that doctrine to follow any district judge's decisions either.[44] Instead, district court decisions are authority only to the extent they are persuasive. Of course, a bankruptcy court is ordinarily bound to follow a district judge's appellate decision in subsequent proceedings controlled by the doctrines of law of the case, or issue or claim preclusion, but *Quenzer* is not related to this case, so none of these doctrines could make it binding here.

## B. The Joneses' Kansas Consumer Protection Act Claim

■ The Joneses claim that Novastar engaged in an unconscionable act or practice prohibited by the Kansas Consumer Protection Act.[45] Specifically, they rely on KCPA § 50–627, which provides that it is unconscionable for a lender (a "supplier" under the statute) to make a loan when there is no reasonable probability that the borrower can repay it in full. The statute reads, in pertinent part:

(a) No supplier shall engage in any unconscionable act or practice in connection with a consumer transaction. An unconscionable act or practice violates this act whether it occurs before, during or after the transaction.

(b) The unconscionability of an act or practice is a question for the court. In determining whether an act or practice is unconscionable, the court shall consider circumstances of which the supplier knew or had reason to know, such as, but not limited to the following that:

. . . .

(4) when the consumer transaction was entered into, there was no reasonable probability of payment of the obligation in full by the consumer.[46]

The Joneses contend that Jones's substantial unemployment and his wife's relatively low income establish that there was no reasonable probability that Jones could pay the debt to Novastar in full. Novstar should have known these facts, they allege, because Jones told Alexander that he wanted to get a loan based on cash flow, not income, and gave Alexander bank statements showing that in the previous two years, over two hundred of Jones's checks had been returned for non-sufficient funds. The Joneses implicitly assert either that Alexander told Novastar all that Jones told him or that Alexander's knowledge must be imputed to Novastar. They add that if Novastar had asked for copies of their tax returns, it would have learned their adjusted gross income was very low for the two years before they obtained the loan. Novastar's defense to this claim is that Jones signed a loan application misrepresenting his monthly income to be $7,000, and that Novastar was given a two-month profit and loss statement supporting this figure.

Novastar has not established that it is entitled to summary judgment on this claim. Ignoring Jones's allegations that (1) he told Alexander he wanted a loan based on cash flow rather than income, (2) he signed only a blank loan application form that Alexander said he would fill out later based on the information Jones had

---

44. *In re KAR Development Associates, L.P.,* 180 B.R. 629, 640 (D.Kan.1995); *see also Campbell By and Through Jackson v. Hoffman,* 151 F.R.D. 682, 684 n. 1 (D.Kan.1993) (Rogers, J.) (recognizing that district judges within a district are not bound by one another's decisions). Both these decisions rely on

*Threadgill v. Armstrong World Industries, Inc.,* 928 F.2d 1366, 1371 and n. 7 (3d Cir.1991) as authority for their conclusions.

45. K.S.A. 50–623 to –643.

46. K.S.A.2002 Supp. 50–627(a) & (b)(4).

provided, and (3) he gave Alexander bank statements showing he had written a large number of non-sufficient-funds checks during a two-year period just before the loan was made, Novastar argues that it did not know or have reason to know that Jones would probably not be able to repay the loan. The Joneses' claim under the KCPA seems to the court to rely on the unstated assumption that Alexander either passed on to Novastar all the information that Jones purportedly gave him, or was Novastar's agent in the transaction so that Novastar must be charged with knowing everything Jones told him. Novastar, on the other hand, seems to assume that the Joneses were responsible for the false information it claims it had before it made the loan—namely, the income and employment information contained in one or both of the loan applications and the profit and loss statement that Novastar has submitted in support of its motion.

The court concludes that a rational fact finder could accept Jones's allegations about the information he supplied to Alexander, and could find that Alexander either passed that information on to Novastar or was Novastar's agent in the transaction. A rational fact finder might conclude, as the Joneses argue, that Novastar ignored warning signs about their inability to repay the loan and instead made the loan simply because an appraisal of their home indicated it was worth about 15% more than the amount of the loan. Consequently, summary judgment must be denied on this claim.

## II. Novastar's Counterclaims

### A. Objection to Dischargeability, 11 U.S.C.A. § 523(a)(2)(B)

Novastar's first counterclaim is that Jones's obligation to it should be nondischargeable because he obtained the loan by submitting a loan application and profit and loss statement that contained false statements concerning his financial condition. Section 523(a)(2)(B) of the Bankruptcy Code specifies the elements that Novastar must prove to succeed on this claim. The provision excepts from discharge a debt:

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

. . . .

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive.[47]

In *Driggs v. Black (In re Black)*, the Tenth Circuit ruled that the debtor's intent under this subsection "may be inferred from a sufficiently reckless disregard of the accuracy of the facts,"[48] and other circuits have also indicated that the intent to deceive can be inferred from some degree of recklessness.[49] However,

**47.** 11 U.S.C.A. § 523(a)(2)(B).

**48.** 787 F.2d 503, 506 (10th Cir.1986), *abrogated in part on other grounds by Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

**49.** *See Insurance Co. of North America v. Cohn (In re Cohn)*, 54 F.3d 1108, 1118–19 (3d Cir. 1995) (intent to deceive can be inferred from totality of circumstances, including debtor's reckless disregard for the truth); *Equitable Bank v. Miller (In re Miller)*, 39 F.3d 301, 305 (11th Cir.1994) (court may look to totality of circumstances, including debtor's recklessness to infer whether debtor submitted statement with intent to deceive); *Martin v. Bank of Germantown (In re Martin)*, 761 F.2d 1163,

the court notes that *Black* was an appeal following a trial, not from a summary judgment ruling.[50]

 The last statutory element of Novastar's claim under § 523(a)(2)(B)—Jones's intent to deceive—is typically the most difficult to prove, and consequently one that usually precludes a grant of summary judgment. Consideration of that element alone convinces the court that Novastar's motion on this claim must be denied. Questions about a person's intent or other state of mind require consideration of intangible factors such as witness credibility and can rarely be resolved by summary judgment.[51] The evidence before the court might support inferences leading to a finding of fact that Jones intended to deceive Novastar, but Jones has offered an innocent explanation for the false information that, at trial, could be accepted as true.

Jones alleges that he gave Alexander accurate information about his financial circumstances, signed only a blank loan application for him, and never provided anyone a profit and loss statement for his financial activities. Neither side has supplied any evidence from Alexander himself about his actions in connection with the Jones–Novastar transaction. Novastar has presented nothing to show that Jones necessarily knew that false information about his income and employment situation was included in the loan application Novastar received in connection with the loan, or that he supplied the profit and loss statement. As the evidence before the court now stands, it is possible that Jones did tell Alexander the truth about his finances, and that Alexander falsified the information that he supplied to Novastar without Jones's knowledge. If the fact finder accepts this theory, then it would conclude that Jones did not intentionally cause the false information to be given to Novastar and had no intent to deceive it. While signing a blank loan application for a mortgage broker might be somewhat reckless, without evidence to show that Jones knew or should have known that the application would or at least might be completed with false information, or learned before the transaction was consummated that false information had been supplied, the court does not believe signing the blank loan application was sufficiently reckless to require the fact finder to decide that Jones intended to deceive Novastar.

**B. Objection to Discharge, 11 U.S.C.A. § 727(a)(4)(A)**

 Novastar's other counterclaim is that Jones made a false oath in connection with his bankruptcy case, in violation of § 727(a)(4)(A) of the Bankruptcy Code, by swearing in ¶ 35 of the complaint that commenced this proceeding that when he entered into the transaction with Novastar, he "was substantially unemployed and had been substantially unemployed for an extended period of time." Continuing with its assumption that Jones himself reported on the loan applications that he had been employed by Mark Jones Investments for nine years and that he had monthly income of $7,000, Novastar contends that Jones either lied on the loan application so its

1167 (6th Cir.1985) (intent element satisfied if debtor either intended to deceive creditor or acted with gross recklessness).

**50.** *See* 787 F.2d at 506 (evidence was conflicting on § 523(a)(2)(B) claim, so bankruptcy court finding was not clearly erroneous).

**51.** *Prochaska v. Marcoux,* 632 F.2d 848, 851 (10th Cir.1980), *cert. denied* 451 U.S. 984, 101 S.Ct. 2316, 68 L.Ed.2d 841 (1981); see also 10B Wright, Miller & Kane, *Fed. Prac. & Pro. Civil 3d,* § 2730 (1998) (indicating actions involving state of mind can rarely be determined by summary judgment).

§ 523(a)(2)(B) claim must succeed, or he lied in ¶ 35 so he must be denied a discharge pursuant to § 727(a)(4)(A). Under § 727(a)(4)(A), the court must grant debtor Jones a discharge unless he "knowingly and fraudulently, in or in connection with the case—(A) made a false oath or account."

Much like the arguments on its first counterclaim, Novastar's either-or argument on this claim asks the court, in effect, to ignore Jones's assertion that he provided only truthful information to Alexander, and implication that Alexander alone must have produced any false information that Novastar received in connection with Jones's loan application. The court is simply unable to conclude that no reasonable fact finder could believe Jones's assertion, so it cannot grant Novastar's request for summary judgment on this claim. If, as he alleges, Jones gave Alexander only true information and Alexander reported false or misleading information to Novastar on Jones's behalf, then both Novastar's counterclaims could fail, the first because Jones had no intent to deceive Novastar and the second because Jones was telling the truth when he said he was "substantially unemployed."

Jones also argues that Novastar knew the "income" slot on the loan application could mean that a loan might be made based on "cash flow or stated income rather than income in the traditional, conventional, show me your paystub kind of loan." [52] This argument assumes that Alexander disclosed to Novastar the same information that Jones claims he gave to him, or perhaps that Alexander was Novastar's agent so Novastar must be deemed to have had all the information he received from Jones. Neither of these

assumptions is shown by the materials before the court to be necessarily true or necessarily false, and either could provide a somewhat different basis for denying Novastar's motion.

## Conclusion

Novastar has not established that it is entitled to summary judgment on the Joneses' TILA claim, their KCPA claim, or its own counterclaims under 11 U.S.C.A. § 523(a)(2)(B) and 727(a)(4)(A). The motion is denied.

IT IS SO ORDERED.

---

**52.** Memorandum in Support of Plaintiffs' Objection to Defendant's Motion for Summary Judgment, doc. # 38, at 14.